**In re Fred D. LOWE, a/k/a Fred Lowe, Debtor.**

**W. Ryan HOVIS, Trustee, Plaintiff,**

**v.**

**Fred D. LOWE, a/k/a Fred Lowe and Capital Bank and Trust Company of Honea Path, South Carolina, Defendants.**

**Bankruptcy No. 81–01521.
Complaint No. 82–0256.**

United States Bankruptcy Court, D. South Carolina.

Oct. 27, 1982.

David R. Duncan, Hovis & Duncan, Rock Hill, S.C., for plaintiff.

David Cantrell, Anderson, S.C., for defendant/debtor.

Steven C. Kirvin, Watkins, Vandiver, Kirvin, Gable & Gray, Anderson, S.C., for defendant/bank.

## AMENDED ORDER [1]

J. BRATTON DAVIS, Bankruptcy Judge.

At issue is whether the debtor may exempt, under South Carolina law, the cash surrender value of his Individual Retirement Account (I.R.A.).

## FACTS

Fred D. Lowe (Lowe) filed a voluntary petition for relief given by Chapter 7 of the 1978 Bankruptcy Code, (11 U.S.C. § 701 *et seq.*) [2]. W. Ryan Hovis (the trustee) is the trustee of the debtor's estate.

1. This order amends the original order filed in this case October 6, 1982.

In December 1976, Lowe, pursuant to 26 U.S.C. § 408, established an I.R.A. with Capital Bank and Trust Company of Honea Path, South Carolina (the bank). He now claims the cash surrender value of the I.R.A. as exempt under South Carolina Law. The trustee objects and claims the cash surrender value as non-exempt property of the estate.

The account agreement provides that Lowe may make deposits to his account during the course of his taxable year and that the total amount of his deposits may be deducted, for federal income tax purposes, from his income to the extent of the lesser of 15% of his gross income, or $1,500.00. The agreement provides that Lowe must give 90 days notice prior to making any premature withdrawal and that the amount withdrawn may subject Lowe to a penalty provided in the Internal Revenue Code.

The account, as of March 17, 1982, has a value of $3,797.61 plus interest which continues to accrue. Prior to his reaching the age of 59½ years on November 8, 1982, Lowe is not entitled to any payment, nor may he withdraw funds from the account, without incurring a 10% penalty.

The trustee is charged with the duty of administering the estate of the debtor. "Such estate is comprised of all of the following property, wherever located: (1) ... all legal or equitable interests of the debtor ... as of the commencement of the case." § 541(a). The scope of this section is broad. All property within the contemplation of Section 541 comes into the estate, and the property the debtor claims as exempt leaves the estate only after he properly files his request for exemption. *See Rules of Bankruptcy Procedure,* Rules 108 and 403; H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 368 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; *Snyder v. Commercial Credit,* Case No. 82–00099, Complaint No. 82–0144 (B.Ct. D.S.C.1982); *In re Brooks,* 12 B.R. 22 (Bkrtcy.S.D.Ohio 1981); 3 *Collier on Bank-*

2. Further reference to Sections of the 1978 Code will omit the identically numbered section of Title 11, United States Code.

*ruptcy,* ¶ 522.26 at p. 522–64 (15th ed. 1979); 1 *Norton Bankr. L & Prac.* § 26.10 (1981).

Here Lowe did not request an exemption for the I.R.A. at the time of the filing of his petition for relief. After being questioned by the trustee's attorney at the first meeting of creditors and in subsequent letters, Lowe's legal counsel indicated Lowe's intention to claim the exemption of the account.

The trustee then brought this action asking the court to determine whether an exemption is available and asking the court to require the bank to turn over to the trustee the proceeds in the I.R.A. pursuant to § 543(b).[3]

## CONCLUSIONS OF LAW

The issue is one of first impression for this court although other Bankruptcy Courts have considered the treatment of I.R.A.s. *In re Howerton,* 21 B.R. 621, 9 BCD 296 (Bkrtcy.D.Tex.1982), *In re Mace,* 4 BCD 94 (B.Ct.D.Or.1978), and *In re Talbert,* 8 BCD 768, 15 B.R. 536 (Bkrtcy.W.D.La. 1981).

As authorized by § 522(b)(1), South Carolina has opted out of the exemptions contained in § 522(d) of the Bankruptcy Code. *See* S.C.Code 15–41–425 (Supp.1981).

■ S.C.Code 15–41–200(10)(E) (Supp. 1981) provides:

The following real and personal property of a debtor domiciled in this state shall be exempt from attachment, levy and sale under any mesne or final process issued by any court or bankruptcy proceeding: ... (10) The debtor's right to receive: ... (E) A payment under a stock, bonus, pension, profit sharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service unless: (i) Such plan or contract was established by or under the auspices of an insider that employed the

Debtor at the time the Debtor's rights under such plan or contract arose; (ii) Such payment is on account of age or length of service; and (iii) Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 USC 401(a), 403(a), 403(b), 408 or 409).

I.R.A.s are designed to provide funds for the respective depositor's retirement. As of the time of the filing of his petition for relief under Chapter 7 of the Bankruptcy Code, Lowe was not entitled to a payment from the funds in the account without incurring a penalty. As Lowe was due no payment from the I.R.A. as of the moment of filing his petition for relief, he is provided no exemption, under S.C.Code 15–41–200(10)(E) (Supp.1981), in the funds in the account.

There is no guarantee that funds deposited in the I.R.A. will remain there until retirement. A depositor might make an early withdrawal and, in effect, claim an exemption in cash far in excess of the amount allowed under S.C.Code 15–41–200(5) (Supp.1981) which provides that a debtor may exempt his "aggregate interest in cash and other liquid assets to the extent of their value not exceeding One-Thousand and 00/100 ($1,000.00) Dollars; provided, however, that this exemption is available only to an individual who does not claim a homestead exemption."

It should be noted that Lowe has also claimed a homestead exemption pursuant to S.C.Code 15–41–200(1) (Supp.1981).

In *In re Howerton,* 21 B.R. 621, 9 BCD 296, 297 (Bkrtcy.D.Tex.1982), the court commented with regard to the Howertons' claimed exemption in an Individual Retirement annuity:

Initially the Debtors contend their I.R.A.s are not property of the estate

---

**3.** § 543(b) A custodian shall—

(1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

(2) file an accounting of any property of the debtor, or proceeds of such property, that, at any time, came into the possession, custody, or control of such custodian.

based on provisions of their contracts and 26 U.S.C. § 408 which restrict the ability of the annuity contract owner to transfer the contract. Section 541(a) and (c) of the Bankruptcy Code make virtually all property interests of a debtor property of the estate despite any restriction imposed on transfer of the interest. 4 Collier on Bankruptcy Para. 541.22 (15th ed. 1982). The Debtors rely on § 541(c)(2) which creates an exception to the general rule for spendthrift trusts enforceable under applicable nonbankruptcy law. *See* House Report No. 95–595, 95th Cong., 1st Sess. 368 (1977) and Senate Report No. 95–989, 95th Cong., 2d Sess. 83 (1978).

The property interests in issue are not held in trust. 26 U.S.C. § 408 provides several ways to establish retirement plans. Although under § 408(a) an individual retirement account may be held in trust, the Debtors hold individual retirement annuities established under § 408(b). The statute distinguishes between a trust and an annuity as two different methods of establishing retirement plans. Since neither § 408(b) nor the Debtors' contracts provide that the funds are to be placed in trust, § 541(c)(2) does not apply and annuities are property of the estate despite restrictions on their transfer. The Trustee may reach these funds for the benefit of unsecured creditors unless the funds are exempt under some applicable law.

It was concluded in *In re Talbert,* 8 BCD 768, 770, 15 B.R. 536, 538 (Bkrtcy.W.D.La. 1982) that:

> Public policy dictates that such an account not be held exempt. The Court agrees with the Trustee's argument that to allow a debtor to exempt this property would give him a license to convert non-exempt cash to an exempt savings account on the eve of bankruptcy, such account being revocable at his discretion. After bankruptcy the money could be withdrawn with a negligible penalty of ten per cent (10%).

Similarly, in *In re Mace,* 4 BCD 94 (B.Ct. D.Or.1978), the court denied the debtor's exemption in an I.R.A. under Oregon's exemption statute.

■ If the account had been cash held by Lowe at the time he filed his petition for relief, he would have no claim to the funds under the South Carolina exemption statute because he has requested that his homestead be exempted; and, as previously noted, he is not entitled to both exemptions.

As stated in *In re Howerton,* 21 B.R. 621, 9 BCD at 297, 298:

> This court cannot ignore the real nature of the Debtors' I.R.A.s. They are basically tax deferrment (sic) plans over which the Debtors exercise a great deal of control. They may withdraw the cash value of the annuity subject to a tax assessment at anytime and there is no guarantee the funds will be retained until retirement. If the Debtors have the unlimited capacity to reach these funds, so does the Trustee.

### CONCLUSION

Lowe may not exempt, pursuant to the South Carolina Code, the $3,797.61, plus accrued interest, held in the I.R.A. These funds are property of the estate. Accordingly, the Defendant, Capital Bank and Trust, must turn them over to the trustee.

AND IT IS SO ORDERED.