**In re Ronald B. SOPKIN, Debtor,**

**W. Ryan HOVIS, Trustee, Plaintiff,**

v.

**Ronald B. SOPKIN, Bankers Trust and United States of America, Internal Revenue Service, Defendants.**

**Bankruptcy No. 83–01598.**
**Complaint No. 83–1108.**

United States Bankruptcy Court,
D. South Carolina.

Oct. 1, 1985.

David R. Duncan, Hovis & Duncan, Rock Hill, S.C., for plaintiff.

George G. Reaves, Reaves & Moore, Florence, S.C., for defendant Sopkin.

Donald E. Rothwell, Columbia, S.C., for defendant Bankers Trust.

Betsy Burke, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for defendant U.S.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

Ronald B. Sopkin, the debtor, filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101[1] *et seq.*, on October 26, 1983. The debtor claimed, as exempt property, his Individual Retirement Account (IRA).

In this adversary proceeding the trustee seeks the turnover to him of the account, the denial of the exemption claimed by the debtor, and a determination of the tax liability if this court finds that the debtor pledged his IRA. Bankers Trust holds the IRA and seeks to set off two obligations of the debtor to the bank against the IRA.

### FACTS

In 1977 the debtor established an IRA, pursuant to 26 U.S.C. § 408(a), with the People's Bank of South Carolina, predecessor to the defendant, Bankers Trust. The account was funded by a "rollover" from a pension plan account of $40,736.91.

The debtor, now 63 years old, attained the age of 59½ years in August 1981, and will attain the age of 70½ years in August 1992.

The balance in the debtor's IRA, as of March 12, 1985, was $88,572.93.

The debtor twice[2] guaranteed debts owed to Bankers Trust by his son-in-law in an agreement which provides:

As security for the amount guaranteed by the undersigned hereunder, the undersigned hereby grants to the bank a security interest in, a general lien upon and/or right of setoff of the following ... the balance of every deposit account now or hereafter existing of the undersigned with the bank and any other claim

---

1. Further reference to the Bankruptcy Code shall be by section number only.

2. On August 11, 1981, the debtor guaranteed a debt in the amount of $10,004 and on April 23, 1983, the debtor guaranteed a debt in the amount of $11,510.34.

of the undersigned against the bank, now or hereafter existing and all money, instruments, securities, documents, chattel paper, credits, claims demands and any other property right and interest of the undersigned.

Bankers Trust (hereinafter the bank) claims that by granting the security interest the debtor has given to the bank an interest in his IRA. The debtor, contending that he did not pledge the IRA to the bank, relies on the prohibition of 26 U.S.C. § 408 against the pledging of such an account.[3]

The Internal Revenue Service, which has been named as a defendant by the trustee so that the tax consequences of the matters involved herein may be settled, contends that the debtor did not pledge his IRA as security, and that even if he did, the bank may not set off the amount owed because the bank, as trustee for the IRA, holds the funds in a fiduciary capacity and that to permit the set off of the account would breach that duty.

The parties have stipulated that, if the court determines that the debtor did not pledge his IRA to the bank, it is unnecessary for the court to determine the tax consequences.

## ISSUES

The issues, as stipulated in the joint pre-trial order, are:

1. Is the IRA property of the estate?
2. Is the corpus of the IRA exempt property?

3. 26 U.S.C. § 408(a)(4) provides: The interest of an individual in the balance in his account is nonforfeitable.
   26 U.S.C. § 408(e)(4) provides: If during any taxable year of the individual for whose benefit an individual retirement account is established, that individual uses the account or any portion thereof as security for a loan, the portion so used is treated as distributed to that individual.

4. South Carolina has "opted out" of the federal exemptions as allowed in § 522(b)(1). See S.C. Code § 15–41–425 (1976, as amended).

5. S.C.Code § 15–41–200 (1976, as amended) provides: The following real and personal property of a debtor domiciled in this State shall be exempt from attachment, levy and sale under

3. Did the pledge of the IRA effect a deemed distribution of the funds?
4. Is the bank entitled to setoff the amount owed to it from funds held in the IRA?
5. Should the bank be required to turn over to the trustee the funds held in the IRA?

## DISCUSSION

### I

*The IRA is property of the estate.*

The estate created by the debtor's filing his petition for relief is comprised of "all legal or equitable interests of the debtor ... as of the commencement of the case." § 541(a). This court has previously decided that an IRA is property of the estate, and so holds here. *Hovis v. Lowe (In re Lowe)*, 25 B.R. 86 (Bankr.D.S.C. 1982). *See also, In re Howerton*, 21 B.R. 621 (Bankr.D.Tex.1982).

### II

*The corpus of the IRA is exempt property.*

In *Lowe* the debtor had established an IRA pursuant to 26 U.S.C. § 408 and sought to exempt the cash surrender value under the South Carolina[4] exemption statute (S.C.Code § 15–41–200 (1976, as amended).[5]

This court stated in *Lowe:*

any mesne or final process issued by any court or bankruptcy proceeding: ... (10) The debtor's right to receive: ... (E) a payment under a stock bonus, pension, profit sharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service, unless (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose; (ii) such payment is on account of age or length of service; and (iii) such plan or contract does not qualify under §§ 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409).

IRA's are designed to provide funds for the respective depositor's retirement. As of the time of the filing of his petition for relief under Chapter 7 of the Bankruptcy Code, *Lowe was not entitled to a payment from the funds in the account without incurring a penalty. As Lowe was due no payment from the IRA as of the moment of filing his petition for relief, he is provided no exemption,* under S.C.Code § 15–41–200(10)(E) (Supp. 1981) in the funds in the account. (Emphasis added).

*Lowe, supra* at 88.

Although *Lowe* has been cited by other courts for the general proposition that an IRA is nonexempt property of the estate, the effect of the opinion should be limited to the facts of that case. In *Lowe,* the debtor was not allowed an exemption pursuant to S.C.Code § 15–41–200(10)(E) (1976, as amended) because, being less than 59½ years of age [6], he "was not entitled to a payment from the funds in the account without incurring a penalty." *Lowe, supra* at 88. In the instant case, the debtor, being over 59½ years old, could elect to receive payments under his plan without incurring a penalty.

The trustee argues that, although the debtor may now receive payments under the plan without incurring a penalty as he could have at the time of his filing the petition for relief, the debtor has not made the election, therefore, he has no *right* to receive payments. That conclusion is fallacious in that it disregards the fact that the debtor has the *right* to receive payments, he simply has not chosen to *exercise* that right.

Courts in other jurisdictions have addressed the issue of whether an IRA is exempt property of the estate.[7] In deciding whether the IRA is exempt property of the estate, this court must apply South Carolina law.

The pertinent South Carolina exemption statute is modeled after § 522(d)(10)(E) except that it has no requirement that the amount exempt be necessary for the reasonable support of the debtor and his dependents.

In *In re Peeler,* 37 B.R. 517 (Bankr.D. Tenn.1984) the court, interpreting Tennessee's exemption statute, which is similar to South Carolina's, denied the debtor's claimed exemption because it came within an exception [8] to the exemption not found in South Carolina. The court stated that since the debtor had the right to draw on the fund before reaching the age of 58, or draw a lump sum payment thereafter, the funds were specifically excluded from the exemption. The court found no other ground on which to base its decision; in particular, it did not find that an IRA was not a "similar plan or contract" or that it was not on account of age. This court infers from the *Peeler* opinion that, if the exception (see footnote 8) were not in the

---

6. 26 U.S.C. § 408 allows the taxpayer a deduction for the amount contributed to the IRA and defers tax on the funds until the taxpayer receives a payment. However, if the taxpayer makes a withdrawal before age 59½ or engages in a prohibited transaction, such as pledging the account as security, he must include that amount in gross income and pay a penalty.

7. Many of the courts have held that an IRA is not exempt; (*In re Kitson,* 43 B.R. 589 (Bankr.D. Ill.1984) (under Illinois statute IRA is not a pension plan or contract); *In re Talbert,* 15 B.R. 536 (Bankr.D.La.1981) (under Louisiana law IRA was not a pension, annuity, or gratuity payment which would be exempt); *Roemelmeyer v. Gefen (In re Gefen),* 35 B.R. 368 (Bankr.D. Fla.1984) (IRA was not an annuity under Florida law and therefore not exempt); *In re Fichter,* 45 B.R. 534 (Bankr.D.Ohio 1984) (IRA was

not payable on account of illness, disability, death, age, or length of service as required by Ohio exemption statute, therefore, it is not exempt); *In re Peeler,* 37 B.R. 517 (Bankr.D.Tenn. 1984) (IRA not exempt because the debtor had the right to receive the funds before age 58 or in payments over a period less than 60 months).

8. Tenn.Code Ann. § 26–2–111(1)(D): Provided, however, that the assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are not exempt if the debtor may, at his option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less.

Tennessee statute, the court may have allowed the debtor an exemption in the IRA.

In *In re Worthington*, 28 B.R. 736 (Bankr.D.Ky.1983) the court, interpreting an exemption similar to South Carolina's, § 15–41–200 (1976, as amended), commented that "the determination must be made as to whether an IRA account is ... a similar plan or contract."

Each of the specifics named as well as the IRA program has the common theme of deferred tax liability on assets presently owned, and with the ostensible purpose to supplement retirement income in the future or provide benefits by reason of age, illness, disability, or death. There is no question but that the IRA account was a qualified plan pursuant to the Internal Revenue Code, 26 U.S.C. § 408(a), on the date the petition was filed.

The sophistication of deferred compensation plans and programs precludes an exhaustive identification of such arrangements, and thus, the phrase 'similar plan or contract' must by its adoption include those plans closely parallel in nature to the specifics named. Therefore, it must be acknowledged that the legislature in enacting KRS 427.150 did not intend to restrict exempt status to only those arrangements expressly set forth therein, since it recognized the existence of other sophisticated benefit systems regardless of their generic term under the all-encompassing phrase 'similar plan or contract.' To be thus included the similar plan or contract must possess the characteristics of those programs expressly stated or be so parallel in nature as to serve the same goals or purposes. It is well recognized that IRA accounts do possess these traits in that benefits through contributions of a tax-deferred nature do flow to the debtor and his dependents under a formalized plan conditioned upon certain prospective elections or future events and mandating that such accounts to be deemed a qualified plan must adhere to rigid requirements monitored by the Internal Revenue Service.

*Worthington* at 739.

An indication that the Congress intended payments under an IRA to be included within the phrase "similar plan or contract" lies in the exception to the exemption statute, which was summarized in *Collier:*

> If, however, the payment enumerated in clause (E) is on account of age or length of service and the plan or contract was established by an insider that employed the debtor at the time his rights arose, the right to such payments is not exempt if the plan or contract does not qualify under section 401(a), 401(b) [9], 408 or 409 of the Internal Revenue Code of 1954. These sections of the Internal Revenue Code deal with pension, profit sharing, stock bonus plans, annuities, etc.....

*Collier on Bankruptcy* ¶ 522.20, p. 522–67 (15th ed.).

This court infers that the Congress [10] would not have put 26 U.S.C. § 408 in the exception to the exemption statute if it did not intend that IRA's be exempt. All of the other types of plans included in the exception to the exemption are exempt property.

■ Accordingly, this court holds that inasmuch as the debtor has reached the age of 59½ years prior to the commencement of this case, and is entitled to receive payments from his IRA without incurring a penalty, the payments are exempt. S.C. Code § 15–41–200(10)(E) (1976, as amended).

### III

*The debtor did not pledge his IRA to the bank, therefore, it is not necessary to*

---

9. Although this quotation from Collier refers to § 401(b), the actual exception to the exemption (§ 522(d)(10)(E)(iii)) does not include § 401(b); however, it does include § 403(a) and § 403(b) which are not referred to in the Collier quotation.

10. And subsequently the South Carolina General Assembly when it enacted § 15–41–200 (1976, as amended).

*consider the tax consequences of a distribution.*

If the debtor has pledged his IRA to the bank, such action would be treated as if the IRA has been distributed to the debtor who may have incurred tax liability on the distribution. *See* 26 U.S.C. § 408(e)(4) and 26 U.S.C. § 408(d).

The IRA would be included within the security pledged by the debtor's guaranty agreement (see page 2 of this order) *if* the IRA is a "deposit account" with the bank or "any other claim against the bank".

In *Bank of Dixie v. Gentry (In re Todd)*, 37 B.R. 836 (Bankr.W.D.La.1984), the debtor established an IRA with the bank from which he normally borrowed and with which he generally carried on his credit business. The court found that the establishment of an IRA created a trust relationship between the bank and the debtor and that the bank had no right to set off the funds pursuant to § 553. After referring to 26 U.S.C. 408(e)(4), the court stated:

> If the IRA is subject to setoff, or otherwise considered pledged or held as security, it is immediately taxable as though paid out. Therefore, the bank could never contract for an IRA account if that potential customer owed them money and signed a note containing language similar to that set forth in exhibit D.
>
> The plaintiff can not avail itself of 11 U.S.C. § 553 due to an absence of a mutual debt between the parties. While Todd was indebted to the bank in the amount set forth in exhibit D, the IRA was not an obligation from the bank to Todd but was an obligation from the Bank of Dixie *as Trustee* to Todd. As stated above the court must find that the claims of the parties are owing to and due in the same right and capacities. (Emphasis added).

*Todd* at 838.

■ The guaranty agreement embraces a claim of the debtor against the bank. Although the debtor has a claim against the bank for the funds in the IRA, such claim is against the bank *as trustee* [11]—not against the bank in a non-trustee posture. Because the debtor's claim is against the bank *as trustee*, and not in the bank's non-trustee posture, this court holds that a pledge by the debtor of his IRA was not embraced in the guaranty agreement.

Having determined that the debtor did not pledge his IRA, the court does not deem it necessary to consider the tax consequences of a distribution (see page 45).

## IV

*The bank may not set off funds in the IRA in satisfaction of the claim of the bank against the debtor.*

In *Todd, supra,* the court did not permit the bank to set off the debtor's IRA, pursuant to § 553, because the respective obligations of the debtor and the bank were not mutual, saying:

> Plaintiff [bank] can not avail himself of 11 U.S.C. § 553 since the debtor's debt is to the Bank of Dixie while the IRA allegedly subject to setoff is a debt from the Bank of Dixie as Trustee to the debtor. The [bank] seeks to ignore the fact that it is wearing two hats and is not appearing in the same capacity.

Likewise, in *In re McDaniel*, 41 B.R. 132 (Bankr.W.D.Tex.1984), the court denied the bank's request to permit the set off of the debtor's IRA stating:

> Section 553 of the Code essentially requires that before the right of setoff exists the respective claims of the parties must be owing and due in the same right and capacity. In this case while debtor is indebted to the bank on account of the promissory notes, the IRA is not an obligation from the bank to the debtor but is an obligation from the bank *as trustee* to the debtor. Thus, the necessary relationship for existence of setoff rights does not exist.

*McDaniel* at 133.

In *In re Dunn*, 5 B.R. 156 (Bankr.N.D. Tex.1980), the court, denying the bank's

---

**11.** A trust relationship has been created. See, 26 U.S.C. 408(a), (h).

request to set off the debtor's IRA, held that the bank's fiduciary duty to the debtor would be breached by a setoff. In *Dunn* it was stated:

> The Lubbock National Bank is a fiduciary with the bankrupt as its beneficiary. That fiduciary capacity must predominate over any other relationship which it enjoys with the bankrupt, including the creditor-debtor relationship. As to matters within the scope of the fiduciary relationship the trustee (Bank) is under a duty not to profit at the expense of the beneficiary. It has the duty of loyalty and must administer the trust solely in the interest of the beneficiary. It must keep the trust property separate from its individual property which is not subject to the trust. Above all, it is precluded from asserting any claim in the trust which is antagonistic to the beneficiary.
>
> That common law prohibition has been codified and brought forward in the Internal Revenue Code where the interest of a beneficiary in the balance in his account is not forfeitable. 26 U.S.C. § 408(a)(4). That does not necessarily mean that the beneficiary cannot assign the account to a third person, because one may not create a spendthrift trust for himself. It does not mean that the beneficiary may not withdraw the monies, although there is a penalty imposed by IRS for any such withdrawal. It does mean, however, that the trust fund cannot be forfeited to the Bank and the IRA custodian is precluded from asserting any claim to the assets in an IRA.

*Dunn* at 158.

■ Inasmuch as the debts are not mutual as required by § 553 and the fiduciary relationship which exists between the bank and debtor would be breached by a setoff, the bank may not set off the funds in the debtor's IRA against the debtor's obligation on the guaranty to the bank.

### V

■ *The bank shall turn over to the trustee the funds held in the IRA.*

11 U.S.C. § 543(b) provides:

> A custodian shall—(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date such custodian acquires knowledge of the case....

Because the IRA is property of the estate, the bank, as custodian, must turn over the account to the trustee pursuant to § 543(b). *See, Lowe, supra.*

### ORDER

Accordingly, IT IS ORDERED, ADJUDGED AND DECREED that:

1. The IRA is property of the estate.

2. The corpus of the IRA is exempt property.

3. The debtor did not pledge his IRA, therefore, it is not necessary to consider the tax consequences of a distribution.

4. The bank may not set off funds in the IRA in satisfaction of the claims of the bank against the debtor.

5. The bank shall turn over to the trustee the funds held in the IRA; and, upon receipt of the same, the trustee shall turn them over to the debtor.