In re Charles John GRALKA and Janet Marie Gralka, Debtors.

Mary REITMEYER, Trustee–Movant,

v.

Charles John GRALKA and Janet Marie Gralka, Respondents.

GREENTREE ROAD SHOPPING CENTER, Movant,

v.

Charles John GRALKA and Janet Marie Gralka, Respondents.

Bankruptcy No. 96–21320–MBM. Motion Nos. 96–2020M, 96–1970M.

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 6, 1997.

Mary Reitmeyer, Trustee, Pittsburgh, PA.

David K. Rudov, Pittsburgh, PA, for Greentree Road Shopping Center.

Ronald D. Morelli, Pittsburgh, PA, for Charles and Janet Gralka.

## MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

### STATEMENT OF FACTS

Movants in this proceeding, Mary Reitmeyer (Chapter 7 trustee) and Greentree Road Shopping Center (creditor), object to the claimed exemption of two Nationwide Multiflex individual retirement accounts (IRAs) by Charles and Janet Gralka, respondents herein and the debtors in the above-captioned bankruptcy case. The debtors claimed their exemption in the IRAs under 11 U.S.C. § 522(d)(10)(E). The IRAs are valued by the debtors in their Bankruptcy Schedule B at $39,284.27.

The debtors' Bankruptcy Schedule I indicates that Charles Gralka, who is forty-five (45) years old, is employed as a manager of a specialty grocery store, that he has held that position for three years, and that his monthly gross and net wages respectively are $3,041.66 and $2,518.08. Schedule I also indicates that Janet Gralka, who is forty-six (46) years old, is not employed (ie., "homemaker"). However, testimony elicited at a hearing on this matter held November 4, 1996, established that she works twenty (20) to thirty (30) hours per week without pay at the same business that employs her husband and that is also owned by her parents. The debtors have two small children presently aged nine (9) and six (6) years old. The debtors indicate, in answer to question 3 in their Statement of Financial Affairs, that they presently prepay $100.00 per month on their residential mortgage indebtedness, which they seek to reaffirm.

Appearing on behalf of the debtors at the hearing was a financial consultant with expertise in financial planning for retirement. This expert testified as to a number of projections that he had made regarding the debtors' financial plan for their retirement. Necessary to these projections were certain assumptions, including that:

(1) The debtors would retire at age sixty-two (62), which is approximately seventeen (17) years from now;

(2) Expenses post-retirement should be estimated at eighty (80) percent of current expenses in order to maintain a present standard of living;

(3) Because their present expenses approximate $2,500 per month ($2,407 as indicated in their Bankruptcy Schedule J), eighty (80) percent of that figure, adjusted for a projected three (3) percent inflation factor, would result in a need for annual post-retirement revenue of $40,000;

(4) Revenues from social security will only provide $20,000 annually, or approximately half of the necessary annual post-retirement income; and

(5) The debtors will not receive any post-retirement income from sources in addition to the two IRAs and social security, such as other pensions, retirement plans, or investment vehicles.

On the basis of these assumptions, the financial consultant projected that the debtors "would have to set aside approximately $4,300 per year, or $358 per month, [for seventeen (17) years] at an 8% rate of return, to ... replace" the present balance in the IRAs if they cannot be exempted and are thus lost in the administration of this bankruptcy case. Furthermore, in addition to

what they have presently saved and claimed as an exemption, the debtors "would have to invest an additional $7,500 per year, or $625 per month, for the next 17 years, assuming an 8% return on their portfolio," in order to meet their financial goals at retirement.

Movants suggest that the IRAs may not be exempted under § 522(d)(10)(E) in this case because (a) they are not similar in nature to a "stock bonus, pension, profit sharing, [or] annuity ... plan or contract ... [where payment is received] on account of illness, disability, death, age, or length of service," (b) the debtors are not presently receiving payments from the IRAs, a fact that, according to one interpretation of existing Third Circuit precedent, apparently prevents exemption of an otherwise exemptible plan or contract, and (c) the IRAs are not "reasonably necessary for the support of the debtor[s] and [their] dependent[s]." The debtors disagree with all of these contentions.

## DISCUSSION

The parties agree that, pursuant to 11 U.S.C. § 541(a)(1), the IRAs are presently property of the bankruptcy estate because they do not include spendthrift restrictions enforceable under applicable nonbankruptcy law[1] and, thus, cannot be excluded from the estate pursuant to 11 U.S.C. § 541(c)(2). However, the parties dispute whether the debtors may exempt from property of the estate their right to payment from the IRAs

pursuant to § 522(d)(10)(E). Section 522(d)(10)(E) provides, in pertinent part, that a debtor may exempt his or her

right to receive ...

a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.[2]

11 U.S.C.A. § 522(d)(10)(E) (West 1996).

**I.** ***Whether an IRA is a plan or contract similar in nature to a "stock bonus, pension, profit sharing, [or] annuity ... plan or contract ... [where payment is received] on account of illness, disability, death, age, or length of service?"***

Movants argue that an IRA is not similar in nature to those plans and contracts that are specifically listed in § 522(d)(10)(E) be-

---

1. Even had the debtors' IRAs included spendthrift restrictions, it is doubtful whether such restrictions would have been enforceable "under applicable nonbankruptcy law." With respect to federal law, the restrictions would not have been enforceable pursuant to provisions of the Employee Retirement Income Security Act (ERISA) because the IRAs were established by the debtors rather than an employer and, thus, the IRAs themselves are not covered under any part of ERISA. 29 U.S.C. § 1002(2)(A), (3); 1003(a). Furthermore, although IRAs may be qualified under 26 U.S.C. § 408(a); such qualification is not predicated on compliance with a restriction on alienation or assignment of benefits. *See* 26 U.S.C.A. § 401(a)(13) (West 1996) (the spendthrift restrictions in this paragraph only apply to stock bonus, pension, or profit-sharing plans whose trusts are qualified under § 401(a) and not IRAs qualified under § 408). Therefore, even if such a restriction were included in an IRA, an administrator's noncompliance therewith would not defeat qualification of the IRA

under the Internal Revenue Code. That being the case, compliance with the restriction likely could not have been enforced by virtue of any fiduciary provision. As to state law, such a restriction would not have been enforceable under Pennsylvania spendthrift law because an IRA is necessarily a settlor trust, and spendthrift restrictions in a settlor trust are not enforceable to defeat creditor interests such as those protected by the federal bankruptcy law. *In re Comp*, 134 B.R. 544, 550 (Bankr.M.D.Pa.1991); *In re Houck*, 181 B.R. 187, 193–95 (Bankr.E.D.Pa. 1995).

2. Because the parties in this case have not questioned whether the IRAs in question are qualified under 26 U.S.C. § 408 (ie., qualified for federal income tax purposes), this Court will presume that they are so qualified and that the three-part exception to the exemption, found in § 522(d)(10)(E)(i)–(iii), is inapplicable.

cause, unlike those plans and contracts, an IRA's present cash value may be withdrawn by its beneficiary at any time and without any reason, subject only to a ten (10) percent excise tax for early withdrawal pursuant to 26 U.S.C. § 72(t).[3] Movants' contention is supported by decisions of numerous courts, which have generally held that a beneficiary's control over distribution from an IRA either (a) renders an IRA dissimilar *per se* to those plans and contracts specifically listed in § 522(d)(10)(E), or (b) means that distribution from an IRA cannot be "on account of illness, disability, death, age, or length of service." *See, e.g., In re Pauquette,* 38 B.R. 170 (Bankr.D.Vt.1984); *In re Fichter,* 45 B.R. 534 (Bankr.N.D.Ohio 1984); *In re Herbert,* 140 B.R. 174 (Bankr.N.D.Ohio 1992). However, substantial case authority also supports the debtors' contrary position. *See, e.g., In re Carmichael,* 100 F.3d 375 (5th Cir.1996); *In re Bates,* 176 B.R. 104 (Bankr. D.Me.1994); *In re Cilek,* 115 B.R. 974 (Bankr.W.D.Wis.1990).

■ This Court concludes that IRAs are significantly similar to "stock bonus, pension, profit sharing, [or] annuity ... plan[s] or contract[s]," and that, because an IRA beneficiary has the right to receive payment from an IRA without imposition of the ten (10) percent tax penalty on the basis of, *inter alia,* reaching age 59½, death, or disability, said right to payment is "on account of illness, disability, death, age, or length of service." This Court, in reaching its conclusion, does not in any way rely upon the language of the U.S. Supreme Court in its decision in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), to the effect that "[a]lthough a debtor's interest in ... [IRAs] could not be excluded [from property of the bankruptcy estate] under [11 U.S.C.] § 541(c)(2) because the[se] plans lack transfer restrictions enforceable under 'applicable nonbankruptcy law,' that interest nevertheless *could be* exempted under § 522(d)(10)(E)." *Id.* at 763, 112 S.Ct. at

2249 (emphasis added). This Court agrees with movants herein as well as the court in *In re Evenson,* 165 B.R. 27 (Bankr.E.D.Mich. 1994), that the Supreme Court's statement was only dicta, rather than decisive to its decision, in *Patterson. Id.* at 30 ("A stray comment in *Patterson v. Shumate* ... could cause one to believe incorrectly that the issue of whether IRAs are exempt under § 522(d)(10)(E) has been foreclosed."). Notwithstanding the plea of the debtors herein, this Court also cannot rely upon somewhat similar language by the Third Circuit Court of Appeals in *Velis v. Kardanis,* 949 F.2d 78 (3rd Cir.1991), *aff'g in part, rev'g in part,* 123 B.R. 497 (D.N.J.1991), to the effect that "a present entitlement [to distribution from an IRA is] susceptible to possible exemption under § 522(d)(10)(E)." *Id.* at 82. The Third Circuit in *Velis,* by affirming the conclusion of the district court, which held therein that a "debtor's recourse to § 522(d)(10)(E) will not be foreclosed" when that debtor, "at age sixty-six, enjoys a present right to receive his interest in the ... IRA," *Velis,* 123 B.R. at 510, appears to perhaps have concluded in the manner that the debtors herein assert. Nevertheless, since this Court cannot be quite certain as to the Third Circuit's purpose for its reservation in *Velis* (ie., its use of the phrase "susceptible to possible"), this Court cannot conclude with certainty that the Third Circuit did not intend to defer its decision on the precise issue dealt with herein.

However, since the Third Circuit has not addressed this particular issue, and because this Court is persuaded by the rationale of the Fifth Circuit Court of Appeals in *Carmichael,* it shall adopt that part of the *Carmichael* decision that deals with this issue. The Fifth Circuit in *Carmichael* held that IRAs are significantly similar to those four types of plans and contracts specifically listed in § 522(d)(10)(E) because IRAs, like those plans and contracts, "are substitutes for future earnings in that they are designed to

---

**3.** The 10% excise tax penalty is not imposed if distributions are, *inter alia:*

   (i) made on or after the date on which the employee attains age 59½,

(ii) made to a beneficiary (or to the estate of the employee) on or after the death of the employee,
(iii) attributable to the employee's being disabled within the meaning of subsection (m)(7).
26 U.S.C.A. § 72(t)(2)(A) (West 1996).

provide retirement benefits to individuals." *Carmichael*, 100 F.3d at 378; *see also In re Sopkin*, 57 B.R. 43, 47 (Bankr.D.S.C.1985) (citing *In re Worthington*, 28 B.R. 736, 739 (Bankr.D.Ky.1983)). Perhaps more importantly, the Fifth Circuit seized upon the fact that

> subparagraph (d)(10)(E)(iii) specifically denies exemption to those "similar plans or contracts" that come within the proscription of (d)(10)(E)(I) and (ii) and [that] also fail to qualify under, *inter alia*, IRC § 408, a provision dealing exclusively with IRAs. This express Code section reference to IRAs in the exception makes inescapable the conclusion that at least some—if not all—IRAs were intended to be included in the phrase "similar plan or contract." Were that not so, there would be no exempt § 408 plans or contracts from which non-§ 408 plans or contracts could be exceptions.

*Carmichael*, 100 F.3d at 378; *see also Sopkin*, 57 B.R. at 47; *Cilek*, 115 B.R. at 987 note 14.[4] The Fifth Circuit also concluded that, because an IRA beneficiary has the right to receive payment from an IRA without imposition of the ten (10) percent tax penalty on the basis of, *inter alia*, reaching age 59½, death, or disability, said right to payment is "on account of illness, disability, death, age, or length of service." *Carmichael*, 100 F.3d at 379; *see also Sopkin*, 57 B.R. at 47; *In re Montavon*, 52 B.R. 99, 102 (Bankr.D.Minn.1985). The Fifth Circuit rightly felt that its conclusion on that point was not negated by either (a) the debtor's right to also receive an early withdrawal from an IRA that results in an imposition of the ten percent tax penalty, *Carmichael*, 100 F.3d at 379 ("The language of . . . [§ 522(d)(10)(E) ] does not express a requirement that the right to receive a payment under a 'similar plan or contract' be conditioned 'only' or 'solely' or 'exclusively' on one

of the five listed events."), or (b) the lack of a spendthrift clause in the IRA preventing said early withdrawal. *Id.* at 378; *cf. Evenson*, 165 B.R. at 29–30. Finally, as a matter of policy, the Fifth Circuit concluded that Congress could not have intended to exclude IRAs *per se* from exemption under § 522(d)(10)(E) because

> to conclude that IRAs are not exempt would be to suggest that Congress intended to penalize self-employed individuals for their choice of the form in which their retirement assets are held[, as well as] . . . to create a trap for the unwary in those frequent instances in which funds from other exempt plans are "rolled over" into IRAs when those other plans terminate or when employment ceases.

*Carmichael*, 100 F.3d at 378; *see also In re Clark*, 711 F.2d 21, 23–24 (3rd Cir.1983) (Becker, J., concurring) (Judge Becker argued that the 3rd Circuit majority's decision will unfairly impact self-employed debtors because the assets of employee pension and annuity plans created by employers would not be included in the debtor's estate; this point has since been solidified by the Supreme Court's holding in *Patterson v. Shumate* ).

On the basis of this Court's adoption of the above conclusions of the Fifth Circuit in *Carmichael*, this Court concludes that IRAs are significantly similar to "stock bonus, pension, profit sharing, [or] annuity . . . plan[s] or contract[s]," and that, because an IRA beneficiary has the right to receive payment from an IRA without imposition of the ten (10) percent tax penalty on the basis of, *inter alia*, reaching age 59½, death, or disability, said right to payment is "on account of illness, disability, death, age, or length of service."

---

4. Some courts have concluded "that to allow a debtor to exempt . . . [the right to receive payment from an IRA] would give him a license to convert non-exempt cash to an exempt savings account on the eve of bankruptcy." *In re Talbert*, 15 B.R. 536, 538 (Bankr.W.D.La.1981); *In re Lowe*, 25 B.R. 86, 89 (Bankr.D.S.C.1982). This Court notes that subparagraph (d)(10)(E)(iii) of § 522 operates to preclude a debtor from engag-

ing in such a conversion, except to the extent of $2,000 annually, because any such conversion in excess of $2,000 annually (excepting for permitted rollover contributions) cannot be made without destroying (a) the income tax qualification of the IRA, 26 U.S.C. § 408(a)(1), (b)(2)(B), and (b) consequently, the bankruptcy exemption under § 522(d)(10)(E).

## II. Whether debtors must presently be in a payout status before they can exempt payment rights under plans/contracts pursuant to § 522(d)(10)(E)?

■ Movants contend that the Third Circuit in *Clark* held that a debtor must presently be receiving payments from a retirement plan in order to be able to exempt such payment right under § 522(d)(10)(E). Given the precise wording of the Third Circuit's holding therein—ie., that "present Keogh payments, to the extent [that] they are necessary for the support of the debtor," are subject to exemption, but *"future* payments" are not, *Clark,* 711 F.2d at 23—the movants have reason to contend as they do. Furthermore, the bankruptcy court in *Velis* concluded similarly. *In re Velis,* 109 B.R. 64, 71–72 (Bankr.D.N.J.1989). However, the district court in *Velis* reversed the bankruptcy court on this particular issue, concluding that "[i]t is irrelevant whether a debtor is actually receiving the benefits as long as he or she has the *present right to receive them. " Velis,* 123 B.R. at 510, *aff'g on other grounds,* 109 B.R. 64 (emphasis added). Moreover, the Third Circuit affirmed the district court's ruling in *Velis* in this regard by stating that "a *present entitlement* [to payment from a retirement plan or contract is] susceptible to possible exemption under § 522(d)(10)(E)." *Velis,* 949 F.2d at 82. *See also In re Brewer,* 154 B.R. 209, 213 (Bankr.W.D.Pa.1993). The Third Circuit in *Velis* also held, in particular with respect to an IRA, that if a debtor has reached age 59½ and can, therefore, "withdraw funds from . . . [an] IRA without penalty," said debtor will have "a present entitlement" to said withdrawal. *Velis,* 949 F.2d at 82. This Court presumes that the Third

Circuit would also find that "a present entitlement" to payment from an IRA exists in the instance when the debtor has either died or become disabled (ie., the other two events upon which a debtor can withdraw funds from an IRA "on account of illness, disability, death, age, or length of service," and thereby avoid imposition of the ten percent tax penalty).[5] Given the Third Circuit's decision in *Velis,* therefore, the pertinent inquiry is not whether the debtor is presently receiving payments from a retirement plan or contract but (a) whether the debtor is presently entitled to receive said payments, and (b) with respect to an IRA in particular, whether such right to payment presently exists because the debtor has either reached age 59½, died, or become disabled, thereby permitting the debtor to avoid imposition of the ten percent tax penalty.

Unfortunately for the debtors, they do not presently possess the right to receive payment from their IRAs on account of either having reached age 59½, death, or disability. Therefore, this Court must **DENY** their claimed exemption in their IRAs under § 522(d)(10)(E) on the basis that, pursuant to existing Third Circuit precedent, they are not presently entitled to receive payment therefrom.

Although "[t]his Court . . . is constrained to adhere to the holding[s] of *In re Clark* [and *Velis v. Kardanis* ] where . . . [they are] applicable," *Brewer,* 154 B.R. at 213, the Court is uncertain of, and is interested in precisely, how the Third Circuit would rule in the instance where a debtor is nearing retirement age as defined in an otherwise exemptible plan or contract [6] but is not yet presently

---

5. Although an IRA beneficiary may apparently avoid imposition of the ten percent tax penalty by merely receiving distribution from an IRA in the manner called for under 26 U.S.C. § 72(t)(2)(A)(iv) (ie., distribution "as part of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the . . . [IRA beneficiary] or the joint lives (or joint life expectancies) of such . . . [beneficiary] and his designated beneficiary"), a right to receive payment in such manner, by itself, cannot be classified as a "right to receive . . . payment . . . on account of illness, disability, death, age, or length of service." Because this Court believes that the Third Circuit, at a minimum, would insist that a debtor's pay-

ment right be predicated upon either "illness, disability, death, age, or length of service" before it could be exempted under § 522(d)(10)(E), the right to receive payment in the manner called for under 26 U.S.C. § 72(t)(2)(A)(iv) would not, by itself, provide a debtor with "a present entitlement" to payment from an IRA.

6. The same caveat would apply if the debtor were also nearing another event for which he could receive payment from the plan/contract and that is "on account of illness, disability, death, age, or length of service." With respect to an IRA beneficiary, the pertinent events would be those listed in 26 U.S.C. § 72(t)(2)(A)(i)–(iii) (ie., reaching age 59½, death, or disability).

entitled to receive payment therefrom. In this instance, the debtor would not possess a present right to receive payment from said plan or contract and, according to the analysis above, could not exempt such right under § 522(d)(10)(E). However, in this instance, the rationale for the Third Circuit's decision in *Clark*—ie., "[t]he exemption of *future* payments ... [is not permissible under § 522(d)(10)(E) because future payments] demonstrate[ ] a concern for the debtor's long-term security[,] which is absent from the statute," *Clark*, 711 F.2d at 23 (emphasis theirs)—would seem not to apply because future payments then would not truly address only a debtor's concern for his or her long-term security. Rather, in this particular instance it would seem that future payments would also constitute a means by which a debtor could also meet his or her relative short-term needs. Therefore, this Court cannot conclude with certainty that, in that situation, the Third Circuit's decisions in *Clark* and *Velis* would control to dictate denial of a debtor's exemption of payment rights under § 522(d)(10)(E). However, because the debtors in this case are not presently approaching such an age, this issue is not presently before this Court.

### III. *Whether the debtors' right to receive payment(s) from their IRAs is reasonably necessary for the support of either themselves or their dependents?*

Although this Court is constrained to deny the debtors' exemption request on the basis of *Clark* and *Velis,* it also notes that the debtors' right to receive payment from their IRAs is not reasonably necessary for the support of either themselves or their dependents. In making this determination, the Court notes that the issue is not whether the debtors' right to receive distribution from their IRAs is necessary to their immediate support, but rather whether said payment right would be necessary for their support after they have reached age 59½. This is the appropriate method of analysis because, at least in the Third Circuit, (a) a debtor can only exempt a present right to receive payment from a retirement plan or contract, (b) a present right to receive distribution from

an IRA can only exist when a debtor has either reached age 59½, died, or become disabled, and (c) a bankruptcy court cannot reasonably ascertain when a debtor will become either deceased or disabled.

Factors pertinent to a determination of reasonable necessity under § 522(d)(10)(E) are:

(1) debtor's present and anticipated living expenses;

(2) debtor's present and anticipated income from all sources;

(3) the age of the debtor and his dependents;

(4) the health of the debtor and his dependents;

(5) debtor's ability to earn a living;

(6) debtor's job skills, training and education;

(7) debtor's other assets, including exempt assets;

(8) the liquidity of other assets;

(9) debtor's ability to save for retirement;

(10) the special needs of the debtor and his dependents; and

(11) debtor's continuing financial obligations, e.g., alimony or support payments.

*In re Cauvel,* 146 B.R. 166, 167 (Bankr. W.D.Pa.1992). Several of these factors are pertinent in this case, none of which indicate that the debtors' right to receive payment from their IRAs are reasonably necessary for their support.

In particular, the debtors have sixteen (16) or seventeen (17) years before they will reach their intended retirement age, which is a substantial period within which to replenish the present balances in their IRAs. Indeed, according to their financial consultant's own testimony, the debtors "would [merely] have to set aside approximately $4,300 per year, or $358 per month, at an 8% rate of return," in order to replenish their IRAs. The Court notes in this regard that such a "set aside," not to mention the additional annual $7,500 figure quoted by the debtors' financial consultant to achieve their retirement planning goal, could likely be attained if Janet Gralka were to receive at least a minimal salary for her weekly employment of approximately

twenty (20) to thirty (30) hours. An additional $100.00 per month could be set aside for the debtors' retirement planning if the debtors were to abstain from their present practice of prepaying their residential mortgage loan.

The Court also cannot accept, within the context of this matter, the financial consultant's assumption, upon which are based his projections and corresponding savings requirements, that the debtors must estimate their post-retirement expenses at eighty (80) percent of what they presently are. According to the financial consultant, such an assumption will permit the debtors to maintain their present standard of living. However, such a goal is not appropriate when attempting to establish reasonable necessity in a bankruptcy case. Indeed, "the phrase 'to the extent reasonably necessary for the support' is properly construed to refer to subsistence, not to lifestyle maintenance." *In re Comp,* 134 B.R. 544, 554 (Bankr.M.D.Pa.1991). Furthermore, the Court notes that thirty-two (32) percent of the debtors' present monthly expenditures ($766.38 out of $2,407.00) represents payment on their residential mortgage loan, which loan, according to the debtors' testimony, should be satisfied prior to their retirement. Therefore, a more accurate assumption regarding the debtors' post-retirement monthly expenses would be to calculate them at eighty percent of $1,640.62 (ie., $2,407.00—$766.38), rather than at eighty percent of $2,500.

Finally, the financial consultant has assumed that the debtors will retire when they are sixty-two (62) years old. That assumption necessarily affects his projections for their savings requirements pre-retirement. However, the debtors need not, and indeed may not, retire at that age. If the matter were close, the Court might insist upon a showing of reasonable necessity with projections based upon retirement at age sixty-five (65), since that is the most frequent age for retirement in this country.

## CONCLUSION

An IRA is significantly similar to a "stock bonus, pension, profit sharing, [or] annuity ... plan or contract." Because a debtor has the right to receive payment from an IRA without imposition of the ten (10) percent tax penalty on the basis of, *inter alia,* reaching age 59½, death, or disability, said right to payment is also "on account of illness, disability, death, age, or length of service." However, a debtor, at least in the Third Circuit, can only exempt a right to receive payment from a retirement plan under § 522(d)(10)(E) in the instance when that debtor's entitlement is present. With respect to an IRA, a present entitlement to payment therefrom only exists in the instance when a debtor has either reached age 59½, died, or become disabled, thereby permitting the debtor to avoid imposition of the ten percent tax penalty. In this case, the debtors do not presently possess the right to receive payment from their IRAs on account of either having reached age 59½, death, or disability. Therefore, this Court must **DENY** their claimed exemption in their IRAs under § 522(d)(10)(E) on the basis that, pursuant to existing Third Circuit precedent, they are not presently entitled to receive payment therefrom. Moreover, the debtors could not have exempted their right to payment from their IRAs in any event because said right was not reasonably necessary for either their support or that of their dependents.[7]

While the claimed exemption in the IRAs is **DENIED,** and the debtors are **DIRECTED** to promptly turn over the IRAs and accompanying records to the Chapter 7 trustee, the Chapter 7 trustee may not realize for the benefit of creditors all of the proceeds that she ultimately obtains from cashing in the IRAs. Instead, the Chapter 7 trustee is specifically **DIRECTED** to set aside from the IRA proceeds, and then promptly forward to the debtors, an amount that will enable the debtors to personally

7. The Court notes that the debtors clearly could have exempted most, if not all, of the balance in their IRAs under 11 U.S.C. § 522(b)(2)(A), if they had chosen to do so, because IRAs can be exempted pursuant to Pennsylvania law. If the debtors wish to pursue this option, they may do so by amendment of their Schedule C in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure.

satisfy in the future any tax and penalty consequences that will result from the trustee's early withdrawal of funds from the IRAs. If said amount becomes an issue the Court will appoint an independent accountant to perform the necessary calculation and subsequently charge both the trustee and the debtors for one-half of the cost thereof.

An appropriate order will be entered.

### ORDER OF COURT

**AND NOW** this **6th day** of **January, 1997,** in consideration of the objection by both movants in this proceeding to the debtors' claimed exemption in two Nationwide Multiflex individual retirement accounts (IRAs) pursuant to 11 U.S.C. § 522(d)(10)(E), and subsequent to a hearing held on November 4, 1996, and as explained in detail in the foregoing memorandum opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the debtors' claimed exemption in their IRAs under § 522(d)(10)(E) is **DENIED** on the basis that, pursuant to existing Third Circuit precedent, the debtors are not presently entitled to receive payment from either IRA. The debtors do not possess such a present entitlement because they have not reached age 59½, died, or become disabled. Moreover, the debtors could not have exempted their right to payment from their IRAs in any event because said right was not reasonably necessary for either their support or that of their dependents. This Court denies the debtors' claimed exemption in their IRAs notwithstanding the Court's holding that (a) an IRA is significantly similar to a "stock bonus, pension, profitsharing, [or] annuity ... plan or contract," and (b) because a debtor has the right to receive payment from an IRA without imposition of the ten (10) percent tax penalty on the basis of, *inter alia,* reaching age 59½, death, or disability, said right to payment is also "on account of illness, disability, death, age, or length of service."

While the claimed exemption in the IRAs is **DENIED,** and the debtors are **DIRECTED** to promptly turn over the IRAs and accompanying records to the Chapter 7 trustee, the Chapter 7 trustee may not realize for the benefit of creditors all of the proceeds that she ultimately obtains from cashing in the IRAs. Instead, the Chapter 7 trustee is specifically **DIRECTED** to set aside from the IRA proceeds, and then promptly forward to the debtors, an amount that will enable the debtors to personally satisfy in the future any tax and penalty consequences that will result from the trustee's early withdrawal of funds from the IRAs.