**In re Ronald R. FULTON and Charlene A. Fulton, Debtors.**

**William Pineo, Trustee, Plaintiff,**

**v.**

**Ronald R. Fulton, Defendant.**

**Bankruptcy No. 97–25673–MBM. Adversary No. 98–2337–MBM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 3, 1999.

William Pineo, Meadville, PA, for Chapter 7 Trustee.

Edgardo D. Santillan, Beaver, PA, for Ronald R. Fulton.

### *MEMORANDUM OPINION*

M. BRUCE McCULLOUGH, Bankruptcy Judge.

Ronald Fulton (hereafter "Fulton"), one of the above-captioned debtors and the instant defendant, presently retains possession of three separate individual retirement annuities (hereafter the "IRA Annuities") issued by the John Hancock Mutual Life Insurance Company (hereafter "John Hancock"). Fulton contends that he does not have to turn over to the instant Chapter 7 Trustee possession of the IRA Annuities because, according to Fulton, said annuities are excluded from property of his bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). Fulton asserts that the IRA Annuities are so excluded because, according to Fulton, (a) 42 Pa.Cons.Stat.Ann. § 8124(b)(1)(ix), a Pennsylvania statute that serves to generally exempt from creditors' claims, *inter alia,* individual retirement annuities, also constitutes a transfer restriction upon such assets within the

meaning of 11 U.S.C. § 541(c)(2), and (b) the fact that § 8124(b)(1)(ix) constitutes such a transfer restriction dictates that the IRA Annuities be so excluded pursuant to 11 U.S.C. § 541(c)(2). Importantly, Fulton contends that he may take advantage of a state exemption provision like 42 Pa. C.S.A. § 8124(b)(1)(ix) to exclude the IRA Annuities from his bankruptcy estate notwithstanding his decision to simultaneously take, with respect to the remainder of his assets, the federal exemptions offered in 11 U.S.C. § 522(d) rather than those exemptions afforded by state, local, and federal nonbankruptcy law. Thus, Fulton's position, in its simplest form, is that he is entitled to simultaneously utilize in bankruptcy so as to shield from his bankruptcy estate both a state exemption statute (ie., 42 Pa.C.S.A. § 8124(b)(1)(ix)) and the federal exemptions provided under 11 U.S.C. § 522(d).

William Pineo, the instant Chapter 7 Trustee and plaintiff herein (hereafter "the Trustee"), disagrees wholeheartedly with Fulton's position that the IRA Annuities may be so excluded from Fulton's bankruptcy estate via 42 Pa.C.S.A. § 8124(b)(1)(ix), arguing instead that the IRA Annuities are not so excluded from Fulton's bankruptcy estate. Consequently, the Trustee seeks, by virtue of the complaint commencing the instant adversary proceeding, an order from this Court, pursuant to 11 U.S.C. § 542(a), directing Fulton to turn over to the Trustee possession of the IRA Annuities.[1]

The Court wishes to point out upfront that the Trustee would not question, and the Court would not need to resolve, whether the IRA Annuities can be *excluded* from Fulton's bankruptcy estate by virtue of a state *exemption* statute if Fulton had simultaneously elected to take, with respect to the remainder of his assets, the

---

1. The Trustee seeks the aforesaid turnover order in Count 2 of his complaint. In Counts 1 and 3 of his complaint the Trustee respectively (a) seeks a turnover of information from Fulton pursuant to 11 U.S.C. § 521(4), and (b) objects to Fulton's discharge pursuant to

11 U.S.C. § 727(a)(2), (3) & (4). However, the Trustee has subsequently moved to amend his complaint so as to delete Counts 1 and 3, which motion the Court grants at this time as set forth in the order which accompanies this memorandum opinion.

exemptions afforded under Pennsylvania nonbankruptcy law rather than the federal exemptions provided under § 522(d) because, in that particular instance, Fulton would undoubtedly be entitled to take advantage of 42 Pa.C.S.A. § 8124(b)(1)(ix), whether it be in the form of exclusion or exemption. Resolution of the issue of whether an asset can be excluded from a bankruptcy estate by virtue of a state exemption statute only becomes necessary, and thus worthwhile, in the instance when a debtor, such as Fulton, seeks to simultaneously take, with respect to the remainder of his or her assets, the federal exemptions under § 522(d) rather than those provided under state exemption law. As for Fulton's motive in attempting to so simultaneously utilize both state exemption law and § 522(d), the Court must conclude that he has determined that he will be benefitted by said simultaneous use, presumably because (a) he apparently believes that 42 Pa.C.S.A. § 8124(b)(1)(ix) serves to exempt entirely the IRA Annuities, (b) he also believes, and rightly so, that said annuities, if they can be exempted at all under § 522(d)— § 522(d)(10)(E) in particular—cannot automatically be so exempted given § 522(d)(10)(E)'s "reasonably necessary" test, and (c) he can exempt other assets in accordance with § 522(d) that may not be exempted under state, local, or federal nonbankruptcy law. Whether Fulton can have the best of both worlds (ie., whether he can simultaneously utilize state exemption law to exclude the IRA Annuities while electing to take, with respect to the remainder of his assets, the federal exemptions offered under § 522(d)) is the subject of the first part of the Court's discussion below.

In the event that the IRA Annuities are not excluded from his bankruptcy estate, Fulton argues, in the alternative, that said annuities may be exempted therefrom pursuant to the federal exemption afforded by 11 U.S.C. § 522(d)(10)(E), thereby also negating the need for a turnover of said annuities to the Trustee. The Trustee also takes issue with this particular position by Fulton, contending instead that the IRA Annuities may not be exempted by Fulton pursuant to § 522(d)(10)(E). Consequently, the Trustee objects to Fulton's exemption of the IRA Annuities under § 522(d)(10)(E). Whether, and to what extent, Fulton can exempt the IRA Annuities under § 522(d)(10)(E) is the subject of parts II and III of the Court's discussion below.

Both parties have also moved for summary judgment at this time with respect to both the instant adversary proceeding and the Trustee's objection to exemption. Because the Court, by order dated February 2, 1999, directed that the instant adversary proceeding and the Trustee's objection to exemption be adjudicated simultaneously, the Court will endeavor to dispose of both matters within this memorandum opinion.

For reasons set forth in detail below, the Court holds that the IRA Annuities (a) are not excluded from Fulton's bankruptcy estate pursuant to § 541(c)(2), which means that said annuities constitute property of his bankruptcy estate, and (b) may be exempted by Fulton under the federal exemption afforded by § 522(d)(10)(E) to the extent that said annuities are "reasonably necessary for the support" of Fulton and his dependents. However, a trial will be necessary to ascertain whether, and to what extent, the IRA Annuities are reasonably necessary for the support of Fulton and his dependents. Because such a trial will be necessary before the Court can ascertain the propriety of Fulton's exemption of the IRA Annuities under § 522(d)(10)(E), and since the Trustee's turnover request for, and the Trustee's objection to Fulton's exemption of, the IRA Annuities turn on the propriety of Fulton's exemption under § 522(d)(10)(E), summary judgment in favor of either party with respect to said turnover request and exemption objection is inappropriate at this time. Therefore, the parties' dueling summary judgment motions both shall be **DENIED WITH PREJUDICE.**

## STATEMENT OF FACTS

The IRA Annuities, two of which Fulton purchased on October 8, 1993 (Annuity No. V0189823 and SD3004128), *see* 2/9/99 Fulton Dep. Ex. A & C, at 3 (Fulton Dep. & Dep. Ex. comprise Ex. 1 to Tr. Sum. Judg. Motion), and the third which he purchased on November 19, 1993 (Annuity No. V0193566), *see* Ex. 3 to Tr. Sum. Judg. Motion, at 3, are comprised entirely of the initial premium payments that Fulton made to purchase said annuities ($16,-746.55, $60,083.88, and $42,399.44 respectively), plus or minus any earnings/losses thereon, and less any charges. *See Id.;* 2/9/99 Fulton Dep. Ex. A & C, at 3; 2/9/99 Fulton Dep., at 16. The respective balances of the three IRA Annuities as of February 10, 1999, are $25,793.68, $18,-543.15, and $60,836.84, or a combined total of $105,173.67. *See* Ex. 2 to Tr. Sum. Judg. Motion (2/11/99 J. Hancock letter). The aforesaid premium payments represented rollovers from distributions that Fulton had received from his pension and 401(k) plans from his previous employment with Nabisco Brands. *See* 2/9/99 Fulton Dep., at 5 & 16. In each of the IRA Annuities contracts Fulton is named as both the owner of, and annuitant for, said annuities. *See* 2/9/99 Fulton Dep. Ex. A & C, at 3; Ex. 3 to Tr. Sum. Judg. Motion, at 3. At the present time Fulton is not receiving any payment from any of the three IRA Annuities.

According to the terms of the IRA Annuities contracts, John Hancock, after receiving Fulton's premium payments, physically placed said payments, net of applicable taxes, into either a Fixed Account or Separate Accounts maintained by John Hancock, which Separate Accounts are comprised of various Subaccounts. *See* 2/9/99 Fulton Dep. Ex. A & Ex. 3 to Tr. Sum. Judg. Motion, both at 7, ¶ 8 & 4, ¶ 2 (definitions). The IRA Annuities contracts also provide that the assets which John Hancock will ultimately utilize to satisfy its contractual obligations to Fulton are presently contained in said Fixed Account or Separate Accounts. *See. Id.* at 10P, ¶ 16 & 11, ¶ 17. Pursuant to the IRA Annuities contracts, "[t]he assets of the Separate Accounts are owned solely by ... [John Hancock, who is] ... not a trustee with respect to any part or the whole of those assets." *See Id.* at 16P, ¶ 23.

Fulton was age fifty-two (52) when he purchased each of the IRA Annuities. *See* 2/9/99 Fulton Dep. Ex. A & Ex. 3 to Tr. Sum. Judg. Motion, at App. Pg. When Fulton filed his voluntary Chapter 7 petition with his wife on August 7, 1997, Fulton was age fifty-six (56) and his wife was age fifty-eight (58). *See* Fulton's Br., at 5, ¶¶ 5 & 8. Fulton was employed as a salesperson during his tenure with Nabisco Brands, *see* 2/9/99 Fulton Dep., at 17, which employment ceased at some point prior to the aforesaid purchases of the IRA Annuities in late 1993. *See Id.* at 5 & 9; Fulton's Br., at 5, ¶¶ 4 & 6. Fulton, at some point in 1995, sustained a disabling injury as a result of a fall, which disability, in part, apparently prevents Fulton from presently obtaining employment similar in nature to that which he previously enjoyed with Nabisco Brands. *See* 2/9/99 Fulton Dep., at 13, 17–18. Fulton characterizes his employment subsequent to his termination with Nabisco Brands, including his present employment, as "minimum wage" in nature, *see Id.* at 6, 21, which employment apparently does not provide Fulton with an opportunity to contribute toward retirement savings for him and his wife. *See Id.* at 6, 15–16. Fulton also characterizes his wife's present employment as "minimum wage" in nature. *See Id.* at 21, 28.

Fulton and his wife both apparently intend to retire as soon as they qualify for the receipt of Social Security benefits. *See* Fulton's Br., at 8, ¶ 27. Fulton will be eligible at age sixty-two (62) to receive reduced Social Security benefits, and can begin to receive full Social Security benefits when he is sixty-five (65) years and eight (8) months of age. *See* 2/9/99 Fulton

Dep. Ex. D, at 5; Fulton's Br., at 8, ¶ 30. Fulton's wife also is apparently eligible to receive reduced Social Security benefits at age sixty-two (62), and can begin to receive full Social Security benefits when she is sixty-five (65) years and four (4) months of age. *See Id.* at ¶ 29.

## DISCUSSION

As an initial matter, there can be little doubt—and Fulton does not disagree—that, unless the IRA Annuities are excluded from Fulton's bankruptcy estate pursuant to § 541(c)(2), each of said annuities constitute property of his bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) because, with respect to each of the IRA Annuities, Fulton (a) is listed as the owner thereof, thereby vesting in Fulton legal ownership over each of the annuities, and (b) is listed as the sole annuitant thereof, thereby vesting in Fulton equitable ownership over each of the annuities. Therefore, the IRA Annuities shall constitute property of Fulton's bankruptcy estate, and a resolution of Fulton's alternative argument for exemption of said annuities from his bankruptcy estate will become dispositive in the instant matter, unless the annuities are excluded from his bankruptcy estate pursuant to § 541(c)(2).

## I. Whether the IRA Annuities are excluded from Fulton's bankruptcy estate pursuant to § 541(c)(2)?

11 U.S.C. § 541(c) provides, in full, that:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C.A. § 541(c) (West 1993). The Third Circuit has construed § 541(c)(2) such that a debtor's individual retirement account or annuity (IRA)[2] "is completely excluded from ... [said debtor's] bankruptcy estate" "if the debtor's IRA meets all of the requirements of § 541(c)(2)." *In re Yuhas,* 104 F.3d 612, 614 (3rd Cir.1997) (interpreting the U.S. Supreme Court's seminal decision in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992)).

The New Jersey debtor in *Yuhas* argued that his IRA was excluded from his bankruptcy estate pursuant to § 541(c)(2) because, according to said debtor, a New Jersey statute, N.J.S.A. § 25:2–1(b), constitutes a restriction upon the transfer of an IRA that is enforceable under applicable nonbankruptcy law. N.J.S.A. § 25:2–1(b) provides, in pertinent part, that:

Notwithstanding the provisions of any other law to the contrary, any property held in a qualifying trust and any distributions from a qualifying trust, regardless of the distribution plan elected for the qualifying trust, shall be exempt

---

**2.** An IRA can be either an individual retirement account as set forth in I.R.C. § 408(a) or an individual retirement annuity as set forth in I.R.C. § 408(b). *See* 26 U.S.C.A. (I.R.C.) § 408(a), (b) (West 1999). Either type of IRA constitutes an individual retirement plan, *see* I.R.C. § 7701(a)(37) (West 1999), and individual retirement plans are eligible to receive the beneficial tax treatment set forth in I.R.C. § 408(d). *See* I.R.C. § 408(d) (West 1999).

from all claims of creditors and shall be excluded from the estate in bankruptcy....

. . . . .

For purposes of this section, a "qualifying trust" means a trust created or qualified and maintained pursuant to federal law, including, but not limited to, section ... 408 ... of the federal Internal Revenue Code of 1986 (26 U.S.C. § ... 408 ...).

N.J.S.A. § 25:2–1(b) (West 1998). After the debtor in *Yuhas* prevailed at the bankruptcy and district court levels, the Third Circuit held that the *Yuhas* debtor's IRA was excluded from his bankruptcy estate pursuant to § 541(c)(2) provided that the following requirements were met:

(1) the IRA must constitute a "trust" within the meaning of 11 U.S.C. § 541(c)(2); (2) the funds in the IRA must represent the debtor's "beneficial interest" in that trust; (3) the IRA must be qualified under § 408 of the Internal Revenue Code; (4) the provision of N.[J.S.]A. § 25:2–1 stating that property held in a qualifying IRA is "exempt from all claims of creditors" must be a "restriction on the transfer" of the IRA funds; and (5) this restriction must be "enforceable under [applicable]³ nonbankruptcy law."

*Yuhas*, 104 F.3d at 614. The Third Circuit in *Yuhas* ultimately affirmed the lower court decisions in the *Yuhas* debtor's favor on the basis that (a) N.J.S.A. § 25:2–1(b) constitutes a restriction upon the transfer of an IRA, thereby satisfying the Third Circuit's fourth requirement set forth above, *see Id.* at 613, (b) the bankruptcy trustee in *Yuhas* either failed on appeal to dispute, or conceded, that the *Yuhas* debtor's IRA met the other four remaining requirements set forth above, *see Id.* at 614, and (c) the *Yuhas* debtor's IRA thus was excluded from his bankruptcy estate under § 541(c)(2). *See Id.* at 613.

▮ Fulton now maintains that his IRA Annuities are excluded from his bankruptcy estate under § 541(c)(2) because, according to Fulton, a restriction upon the transfer of said annuities that is similar in nature to N.J.S.A. § 25:2–1(b) can be found in 42 Pa.C.S.A. § 8124(b)(1)(ix). 42 Pa.C.S.A. § 8124(b)(1)(ix) provides, in pertinent part, that:

... [T]he following money or property of the judgment debtor shall be exempt from attachment or execution on a judgment: ...

(ix) Any retirement or annuity fund provided for under section ... 408 ... of the Internal Revenue Code of 1986 (... 26 U.S.C. § ... 408 ...), the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder.

42 Pa.C.S.A. § 8124(b)(1)(ix) (Purdon's 1997). The Trustee disagrees with Fulton that the language in § 8124(b)(1)(ix) constitutes a restriction upon the transfer of the IRA Annuities within the meaning of § 541(c)(2) because, according to the Trustee, said statutory language does not preclude a transfer by a debtor of his or her IRA. The Court is constrained to agree with Fulton that, consistent with the Third Circuit's rationale in *Yuhas*, the language of § 8124(b)(1)(ix) constitutes a restriction upon the transfer of the IRA Annuities within the meaning of § 541(c)(2). In particular, the Court cannot accept the Trustee's position that § 8124(b)(1)(ix)'s language does not constitute such a restriction because it fails to preclude a debtor from transferring his or her IRA since that particular argument was raised by the trustee, and then specifically rejected by the Third Circuit, in *Yuhas*. *See Yuhas*, 104 F.3d at 615.

However, a conclusion that the IRA Annuities are excluded from Fulton's bankruptcy estate pursuant to § 541(c)(2) is not dictated by a finding, by itself, that

**3.** The *Yuhas* court omitted the word "applicable" from its fifth requirement. This Court

presumes that said omission was unintentional because the term is included in § 541(c)(2).

§ 8124(b)(1)(ix)'s language constitutes a sufficient restriction upon the transfer of the IRA Annuities because said finding, by itself, merely satisfies but one of the five "exclusion" requirements (ie., requirement (4) above) set forth in the above quotation from *Yuhas*. Indeed, the IRA Annuities cannot be excluded from Fulton's bankruptcy estate pursuant to § 541(c)(2) unless said annuities also satisfy the four remaining *Yuhas* "exclusion" requirements (ie., requirements (1)–(3) and (5) as set forth in the above quotation from *Yuhas, see supra* p. 861).

The Trustee contends, in addition to unsuccessfully asserting that *Yuhas* "exclusion" requirement (4) is not met, that *Yuhas* "exclusion" requirement (1) cannot be satisfied because, according to the Trustee, the IRA Annuities do not constitute trusts within the meaning of § 541(c)(2). If the Trustee is correct in this assertion regarding said requirement (1), then, by necessity, the "funds in the IRA [Annuities]" cannot represent beneficial interests in trusts, thereby preventing said annuities from also satisfying *Yuhas* "exclusion" requirement (2). Furthermore, this Court questions, *sua sponte*, whether Fulton actually retains any beneficial interest in the "funds in the IRA [Annuities];" of course, if Fulton does not retain such a beneficial interest, then *Yuhas* "exclusion" requirement (2) is not satisfied.[4] This Court also questions, *sua sponte*, whether § 8124(b)(1)(ix) constitutes "applicable nonbankruptcy law" in the present case. If § 8124(b)(1)(ix) does not constitute such law, then this Court is constrained to hold, for the reasons set forth below, that any transfer restriction contained therein will not be "enforceable under applicable non-

bankruptcy law," thereby preventing the IRA Annuities from meeting *Yuhas* "exclusion" requirement (5) above (i.e., the transfer restriction at issue must be "enforceable under [applicable] nonbankruptcy law").

In endeavoring to satisfy this Court that the IRA Annuities satisfy the remaining *Yuhas* "exclusion" requirements (i.e., requirements (1)–(3) and (5) as set forth in the above quotation from *Yuhas, see supra* p. 861), Fulton will not be able to rely, in any way, for support upon the Third Circuit decision in *Yuhas* given that the Third Circuit therein explicitly refrained from addressing said requirements. *See Yuhas*, 104 F.3d at 614; *In re Martich*, Bankr.No. 97–23010–BM, Motion No. 97–4488M (Bankr.W.D.Pa.1998), at 6–7 & 11 n. 6 (Chief Judge Bernard Markovitz). For the following reasons, the Court concludes that the IRA Annuities do not satisfy *Yuhas* "exclusion" requirements (1), (2), and (5) above.[5]

### A. *Whether the IRA Annuities constitute trusts within the meaning of § 541(c)(2)?*

 The term "trust" is not defined in either § 541(c)(2) or elsewhere in the Bankruptcy Code. Therefore, "[w]hether a trust has been established [for purposes of § 541(c)(2) ] is generally a question to be resolved under the law of the state that is the situs of the [purported] trust fund." *In re California Trade Technical Schools, Inc.*, 923 F.2d 641, 646 (9th Cir.1991); *In re B.I. Financial Services Group, Inc.*, 854 F.2d 351, 354 (9th Cir.1988); *Elliott v. Bumb*, 356 F.2d 749, 753 (9th Cir.1966) (citing *Jaffke v. Dunham*, 352 U.S. 280,

---

4. It is proper for the Court itself to raise an issue regarding whether the IRA Annuities satisfy any of the five aforesaid requirements irrespective of whether the Trustee raises the same issue because Fulton, at least at the trial/bankruptcy court level, has the burden of demonstrating that *all of said* requirements are met before property can be excluded from his bankruptcy estate. *In re Lowenschuss*,

202 B.R. 305, 313 (Bankr.D.Nev.1996); *In re Leimbach*, 99 B.R. 796, 798 (Bankr. S.D.Ohio); *In re Switzer*, 146 B.R. 1, 3–4 (Bankr.C.D.Cal.1992).

5. The Trustee does not dispute whether, and the Court accepts as well that, the IRA Annuities satisfy the third *Yuhas* "exclusion" requirement (i.e., the IRA must be qualified under § 408 of the Internal Revenue Code).

281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957)); *In re San Diego Realty Exchange, Inc.*, 132 B.R. 424, 428 (Bankr. S.D.Cal.1991); *In re Henady*, 165 B.R. 887, 888 (Bankr.N.D.Ind.1994) (citing, *inter alia, In re Cowles*, 143 B.R. 5, 8 (Bankr.D.Mass.1992)). In Pennsylvania, it is black letter law that a trust is not created unless (a) "there be a trustee, some property held in trust, and a beneficiary for whom the property is held," 38 P.L.E. *Trusts* § 11 at 463 (West 1961), (b) the trustee owns the legal title to, but not the beneficial interest in, the trust property (i.e., the trust *res*), *see Id.* ("There must be property *owned by the trustee,* and the trustee must handle the property ... for the benefit of someone else"), and (c) "the settlor manifests an intention to create it[, which] ... manifestation may be by conduct as well as by words." *Id.; see also In re Houck*, 181 B.R. 187, 191 n. 9 (Bankr. E.D.Pa.1995) (citing Black's Law Dictionary at 1509 (6th ed.1990), to the effect that "[i]n order to create ... a 'true' trust, there must be a designated beneficiary, a trustee, a fund sufficiently identified to enable title to pass to the trustee, and actual delivery [of the trust *res*] to the trustee with the intent of passing title [to the trustee]").

Consistent with the preceding statement of the law, the IRA Annuities cannot constitute trusts within the meaning of § 541(c)(2) unless, at a minimum, (a) either the fund premiums paid by Fulton to John Hancock in purchase of said annuities or the funds presently possessed by John Hancock that will ultimately be utilized to satisfy John Hancock's contractual obligations to Fulton (i.e., the assets that will ultimately constitute Fulton's "contract proceeds") constitute trust property,[6] and (b) John Hancock constitutes the trustee with respect to said trust property.[7] Unfortunately for Fulton, however, neither of the preceding requirements can be met because (a) both the fund premiums paid by Fulton to John Hancock in purchase of the IRA Annuities and the funds ultimately utilized by John Hancock to satisfy its contractual obligations to Fulton are contained at all times in the Fixed Account or Separate Accounts maintained by John Hancock, *see supra* pp. 6–7, (b) [t]he assets of ... [John Hancock's] Separate Accounts are *owned solely by ... [John Hancock, who is] ... not a trustee with respect to any part or the whole of those assets, see supra* p. 7, and (c) the Court, although it cannot locate similar contractual language with respect to the assets that reside in John Hancock's Fixed Account, shall presume, given the general nature of a purchased annuity contract, that (i) assets resident in said Fixed Account also are owned solely by John Hancock, and (ii)

**6.** The IRAs at issue in the instant case are individual retirement annuities rather than, as in *Yuhas*, individual retirement accounts. With respect to an individual retirement account, funds are deposited into, and then reside in, either a trust or a custodial account, and it is these funds that are referred to in the second *Yuhas* "exclusion" requirement as the "funds in the IRA." However, in the case of an individual retirement annuity, funds, rather than being deposited into a trust or custodial account, are utilized to pay the premiums in purchase of an annuity contract; ultimately, the annuitant will be paid funds/proceeds in satisfaction of its unsecured annuity contract claim against the entity issuing said annuity. Because of this distinction between individual retirement accounts and annuities, the only funds which can possibly represent both "funds in the IRA" and a debtor's beneficial interest in an individual retirement annu-

ity are either (a) the fund premiums paid to purchase said annuity, or (b) the funds presently possessed by the annuity-issuing entity that will ultimately be utilized by said entity to satisfy its contractual obligation to the annuitant. Consequently, the Court shall correspondingly alter the second *Yuhas* "exclusion" requirement when considering whether Fulton's IRA Annuities satisfy said requirement.

**7.** The Court need not address whether the IRA Annuities could be excluded from Fulton's bankruptcy estate under § 541(c)(2) if Fulton held them in trust as trustee for the benefit of himself and others because Fulton has neither alleged nor proven that, as of the debtors' petition filing date, such a trust existed.

John Hancock is not a trustee with respect to those particular assets either. In light of the preceding findings, the Court must conclude that (a) John Hancock solely owns both legal title to, and the beneficial interest in, the funds which are representative of both the premiums paid by Fulton and the assets that will ultimately be utilized to satisfy John Hancock's contractual obligations to Fulton,[8] (b) said funds, as a consequence, cannot constitute trust property, (c) John Hancock does not, and could not, constitute a trustee with respect to the aforesaid funds, and (d) the proper characterization of the relationship between John Hancock and Fulton is that of debtor/creditor rather than trustee/benefi-

ciary. *See* 38 P.L.E. *Trusts* § 35 at 521 ("One who is given money by another, with an understanding that the recipient should pay interest thereon pending his investment thereof in securities to be approved by the person from whom the money has been received, becomes such person's debtor, not his trustee"). Consequently, the IRA Annuities do not, and cannot, constitute trusts within the meaning of § 541(c)(2).[9]

■ Notwithstanding the above analysis, which analysis somewhat parallels that in *Houck* and *Martich*,[10] the Court recognizes that Fulton might argue, and that several courts have apparently concluded,

8. The Trustee contends, on page 8 of his brief, that (a) "title to the funds remains in Ronald R. Fulton, debtor herein[, and (b) i]t is clear from the Annuity Contracts themselves that they are custodial accounts, not trusts." While the Court agrees with the Trustee that the IRA Annuities do not constitute trusts, the Court takes issue with the other assertions of the Trustee in the preceding statement, concluding instead, for the reasons expressed in the text above, that (a) said annuities are not custodial accounts, and (b) title, both legal and equitable, to the funds rests with John Hancock rather than Fulton.

9. Because the Third Circuit in *Yuhas* did not deal with the precise issue of whether the IRAs involved therein constituted trusts within the meaning of § 541(c)(2), the Court cannot be certain as to how the Third Circuit would have ruled on that issue. However, the Trustee speculates in his brief in support of his summary judgment motion that the language of N.J.S.A. § 25:2–1(b) might be construed such that IRAs and other arrangements, because of their tax qualification under the Internal Revenue Code, are thereby classified as trusts under New Jersey law and, thus, within the meaning of § 541(c)(2). In fact, it appears that the bankruptcy court in *Yuhas* ruled that the IRA at issue therein constituted a trust precisely because of the peculiar language of N.J.S.A. § 25:2–1(b). *See Yuhas,* 186 B.R. 381, 384 (Bankr.D.N.J. 1995); *see also In re Zott,* 225 B.R. 160, 166 (Bankr.E.D.Mich.1998) (finding that the bankruptcy court in *Yuhas* ruled as much). Such a possibility, however, is clearly not afforded by the language of Pennsylvania's § 8124(b)(1)(ix) because said statutory provision never once speaks of, or refers to, a trust.

10. The IRAs at issue in *Houck* and *Martich* were individual retirement accounts that took the form of custodial accounts rather than, as in the instant case, an individual retirement annuity. Notwithstanding this distinction, however, the *Houck* and *Martich* courts concluded that the individual retirement accounts therein did not constitute trusts within the meaning of § 541(c)(2) because said accounts lacked the requisite elements of a trust. *Houck,* 181 B.R. at 191 & n. 9; *Martich,* Bankr. No. 97–23010–BM at 8–9. Because a beneficiary of an IRA custodial account owns both legal title to, and the beneficial interest in, the custodial account into which his or her deposits are made, "there is no separation of [legal] title and beneficial interest [in said deposits]," *see Houck,* 181 B.R. at 187 n. 9, which means that (a) the deposits could not constitute trust property, (b) a trustee could not possess legal title to said deposits, thus precluding the possible existence of a trustee, and (c) an IRA custodial account cannot constitute a true trust. *See Id.; see also supra* pp. 862–63. Comparing an IRA custodial account to an individual retirement annuity, one of the common threads running between the two is that there is no separation of legal title to, and beneficial interest in, the funds at issue, be they the funds on deposit in an IRA custodial account or the funds possessed by the entity issuing an annuity contract; the distinction between the two, which distinction is of no significance given said lack of separation between title and beneficial interest, is that, with respect to an IRA custodial account, the beneficiary owns the legal and equitable interests in the IRA funds, whereas with respect to an individual retirement annuity, the entity issuing the annuity contract owns said legal and equitable interests.

that the language in I.R.C. § 408 operates to make all IRAs trusts for purposes of, *inter alia,* § 541(c)(2) of the Bankruptcy Code. *See In re Hipple,* 225 B.R. 808, 813–15 (Bankr.N.D.Ga.1996); *In re Zott,* 225 B.R. at 163 & n. 3. The Court, however, wholeheartedly disagrees with the preceding proposition, ultimately concluding instead, for the reasons set forth below, that I.R.C. § 408 does not, in any fashion, control regarding whether a trust has been created for purposes of § 541(c)(2).

First, the Court must reject outright any argument that, given the language of I.R.C. § 408(a), all IRAs necessarily must constitute trusts under relevant state law. As an initial matter, I.R.C. § 408(a) deals only with individual retirement accounts and not individual retirement annuities; the latter are the subject of I.R.C. § 408(b). Furthermore, while it is true that "the term 'individual retirement account' means a *trust* created or organized in the United States for the exclusive benefit of an individual or his beneficiaries," I.R.C. § 408(a) (emphasis added), the Court also points out that Congress recognized, when it promulgated I.R.C. § 408(a), that not all individual retirement accounts will, in fact, constitute trusts under relevant state law. That the preceding conclusion is valid is, in fact, evidenced by the language of I.R.C. § 408(h), wherein certain custodial accounts which are not trusts under relevant state law are nevertheless treated as such so that they can also qualify as individual retirement accounts eligible for the beneficial tax treatment accorded by I.R.C. § 408(d). *See* I.R.C. § 408(h) (West 1999) (*"For purposes of this section,* a custodial account shall be *treated as a trust* if . . ., and if the custodial account would, *except for the fact that it is not a trust,* constitute an individual retirement account described in sub-

section (a). *For purposes of this title,* in the case of a custodial account *treated as a trust by reason of the preceding sentence,* the custodian of such account shall be *treated as the trustee thereof"*); *see also* Treas.Reg. § 1.408–2(a), (d) (as amended in 1995) (same as statute); *cf.* I.R.C. § 401(f), (g) (West 1999) (*"For purposes of this title,* a custodial account . . . [or] an annuity contract . . . shall be *treated as a qualified trust* under . . . [I.R.C. § 401] if . . . the custodial account or contract would, *except for the fact that it is not a trust,* constitute a qualified trust under this section" and *"For purposes of this title,* in the case of a custodial account or contract *treated as a qualified trust under this section by reason of this subsection,* the person holding the assets of such account or holding such contract shall be *treated as the trustee thereof"*); Treas. Reg. § 1.401(f)–1 (as amended in 1995) (same as statute). Of course, if all custodial accounts actually constituted trusts under nontax law, then Congress in I.R.C. § 408(h), and the Internal Revenue Service (I.R.S.) in its accompanying regulation, would not have had any need for the aforementioned special language which treats said arrangements as trusts. Therefore, the language of I.R.C. § 408(a) is not, in any way, dispositive of the issue of whether IRAs constitute trusts under relevant state law.

Second, and perhaps more importantly for purposes of the instant analysis, the aforesaid treatment of non-trust custodial accounts as trusts is, by virtue of the explicit language of I.R.C. § 408(h), confined solely to the application of I.R.C. § 408, *see Id.,* thereby negating the possibility that I.R.C. § 408 operates to transform said non-trust custodial accounts into trusts for a purpose other than I.R.C. § 408.[11] *See Estate of Davis,* 171 Cal.

---

**11.** That the treatment of said non-trust custodial accounts as trusts is closely confined to the application of I.R.C. § 408 and its accompanying regulations is not, the Court suspects, mere happenstance but, instead, a result of constitutional concerns; put differently, the

Court does not believe that Congress and the I.R.S. could, within the context of I.R.C. § 408 and its accompanying regulations, have transformed into trusts, for purposes of § 541(c)(2), individual retirement accounts

App.3d 854, 857, 217 Cal.Rptr. 734 (Cal.Ct. App.1985) ("[a] custodial IRA is not an express trust because there is no intent to establish a trust" and "[t]he [lower] court's finding that the IRAs be treated as trusts is limited to Internal Revenue Code section 408's purpose of tax deferment"); *In re Estate of Davis,* 225 Ill.App.3d 998, 1007, 168 Ill.Dec. 40, 589 N.E.2d 154 (Ill. App.Ct.1992) (same); *In re CRS Steam, Inc.,* 217 B.R. 365, 370 (Bankr.D.Mass. 1998) (same); *Martich,* Bankr.No. 97–23010–BM at 7. Consequently, the language of I.R.C. § 408 cannot be construed such that it operates to transform non-trust IRA custodial accounts into trusts for purposes of § 541(c)(2) of the Bankruptcy Code. Therefore, those individual retirement accounts that take the form of custodial accounts cannot constitute trusts within the meaning of § 541(c)(2) of the Bankruptcy Code unless said custodial accounts first constitute trusts under relevant state law.[12]

Third, and most importantly for purposes of the instant analysis, an individual retirement annuity, such as are those at issue in the instant matter, is not, in contrast to an individual retirement account, even defined, in part or otherwise, as a trust, *see* I.R.C. § 408(b), which means that an annuity or endowment contract that qualifies as an individual retirement annuity need not be treated, for purposes of I.R.C. § 408, as a trust in order to qualify for the preferential tax treatment provided in I.R.C. § 408(d).[13] Not surprisingly, and as a direct consequence of the preceding fact, nowhere in I.R.C. § 408 are the annuity or endowment contracts that qualify as individual retirement annuities even implicitly treated as trusts. *See* I.R.C. § 408; *see also* Treas.Reg. § 1.408–3(a) (1980) ("An individual retirement annuity contract which satisfies the requirements of section 408(b) need not be purchased under a trust").[14] Therefore, one

---

that take the form of non-trust custodial accounts even had they wished to do so.

**12.** IRA custodial accounts generally cannot constitute trusts under relevant state law. *See Houck,* 181 B.R. at 191 n. 9; *Martich,* Bankr. No. 97–23010–BM at 8. However, the preceding generality is not unequivocal because a state might pass a statute that is construed such that IRA custodial accounts are classified as trusts. Indeed, New Jersey perhaps has done precisely this with respect to N.J.S.A. § 25:2–1(b), which statutory provision, as explained above, might be construed such that IRAs, because of their tax qualification under the Internal Revenue Code, are thereby classified as trusts under New Jersey law. *See supra* note 9.

**13.** Because an individual retirement account is defined as, *inter alia,* "a trust," *see* I.R.C. § 408(a), arrangements that are not trusts— such as most, if not all, custodial accounts— must be treated as trusts before they can qualify as individual retirement accounts. Hence, the need for I.R.C. § 408(h). An individual retirement annuity, in contrast, is not defined as, *inter alia,* a trust, *see* I.R.C. § 408(b), which means that (a) annuity contracts need not be treated as trusts in order to qualify as individual retirement annuities, and (b) a provision similar to I.R.C. § 408(h) is unnecessary with respect to annuity contracts.

**14.** I.R.C. § 401(f) & (g) operates to treat certain annuity contracts, as well as certain other contracts issued by an insurance company, as *qualified* trusts under I.R.C. § 401 for purposes of Title 26 of the United States Code (i.e., the Internal Revenue Code). *See* I.R.C. § 401(f) ("For purposes of *this title,* ... an annuity contract ... or ... [a certain] contract ... issued by an insurance company ... shall be treated as a *qualified* trust under ... *[I.R.C.] section [401]* if ..."). However, an annuity contract or other insurance contract will not be so treated as a qualified trust under I.R.C. § 401 unless said contract "would, except for the fact that it is not a trust, constitute a qualified trust under ... [I.R.C.] section [401(a)]." I.R.C. § 401(f)(1); Treas.Reg. § 1.401(f)–1(b)(1)(i). "An annuity contract [or other insurance contract] would, except for the fact that it is not a trust, constitute a qualified trust under [I.R.C.] section 401 [only] if it is *purchased by an employer for an employee* under a *plan which meets the requirements of [I.R.C.] section 404(a)(2)."* Treas.Reg. § 1.401(f)–1(b)(3) (emphasis added). A plan which meets the requirements of I.R.C. § 404(a)(2) is one that satisfies "the same qualification requirements that apply to plans that are funded through trusts[—i.e., those requirements which are set forth in I.R.C. § 401, and in particular I.R.C. § 401(a)(1)–(34)—] (other than those [requirements] that are unique to the trust

cannot possibly argue successfully that I.R.C. § 408 operates to transform into trusts, for any purpose, annuity or endowment contracts that qualify as individual retirement annuities. Consequently, individual retirement annuities cannot constitute trusts within the meaning of § 541(c)(2) of the Bankruptcy Code unless the annuity and endowment contracts that form the basis for said annuities first constitute trusts under relevant state law.[15]

Finally, the Court recognizes that the provisions of the Employee Retirement Income Security Act (E.R.I.S.A.) contained in 29 U.S.C. §§ 1001–1461 constitute "applicable nonbankruptcy law" under § 541(c)(2), as do those provisions of E.R.I.S.A. that amended, and which are now found in, the Internal Revenue Code.

*See Patterson*, 504 U.S. at 757–59, 112 S.Ct. at 2246–47. Nevertheless, relevant state law, rather than these particular provisions of E.R.I.S.A., necessarily controls "in regard to the requirements for the establishment of a valid trust" given that said provisions of E.R.I.S.A. are silent with respect to whether a trust is created. *See* 60A Am.Jur.2d *Pensions and Retirement Funds* § 131 (1988). Consequently, the provisions of E.R.I.S.A. contained in 29 U.S.C. §§ 1001–1461 add nothing to the analysis regarding whether IRAs constitute trusts within the meaning of § 541(c)(2).

Because neither the Bankruptcy Code, the Internal Revenue Code, those provisions of E.R.I.S.A. contained in 29 U.S.C.

method of funding)." 7 Stand.Fed. Tax Rep. (CCH 1999) ¶ 18,348.01 at 35,249; I.R.C. § 404(a)(2) (West 1999). An annuity or endowment contract that qualifies as an individual retirement annuity under I.R.C. § 408(b) cannot, even excepting for the fact that it is not a trust, constitute a qualified trust under I.R.C. § 401(a) because said contract, even to the extent that it is purchased by an employer for its employee under an employer-established plan, is not purchased under a plan which meets the requirements of I.R.C. § 404(a)(2). *See* 7 Stand.Fed. Tax Rep. (CCH 1999) ¶ 18,922.033 at 35,694 & ¶¶ 18,922.056–18,922.0657 at 35,705–35,720 (an employer-established plan under which an employer contributes to an IRA of an employee is either a simplified employee pension (SEP) plan or a SIMPLE retirement plan; however, neither SEP nor SIMPLE retirement plans meet all of the requirements of I.R.C. § 404(a)(2)). Therefore, an annuity or endowment contract that qualifies as an individual retirement annuity is not, by virtue of I.R.C. § 401(f) & (g), treated as a qualified trust under I.R.C. § 401 even if said contract is purchased by an employer for its employee under an employer-established plan.

Furthermore, and as is the case with respect to the IRA Annuities in the instant matter, the overwhelming lion's share of annuity and endowment contracts that qualify as individual retirement annuities under I.R.C. § 408(b) are not even purchased by employers but instead are simply purchased by individuals, thereby (a) preventing said contracts from constituting qualified trusts under I.R.C. § 401(a), even excepting for the fact that said contracts are not trusts, and (b) precluding

the treatment of such contracts as qualified trusts under I.R.C. § 401(a).

Stating the above much more succinctly, I.R.C. § 401(f) & (g) operates to treat as *qualified* trusts under I.R.C. § 401(a) for purposes of Title 26 of the United States Code certain annuity and other insurance contracts that are purchased (a) by *employers,* and (b) as part of retirement plans that satisfy all relevant qualification requirements set forth in I.R.C. § 401. However, those contracts that qualify as individual retirement annuities under I.R.C. § 408(b) are not among those contracts that are treated, by virtue of I.R.C. § 401(f) & (g), as *qualified* trusts under I.R.C. § 401(a) because (a) individual retirement annuity contracts are generally not purchased by employers, and (b) even to the extent that said individual retirement annuity contracts are purchased by employers, they are not purchased as part of retirement plans that satisfy all relevant qualification requirements set forth in I.R.C. § 401. Therefore, I.R.C. § 401(f) & (g) does not operate to treat as trusts annuity and endowment contracts that qualify as individual retirement annuities under I.R.C. § 408(b).

**15.** Precisely for the reasons that the instant IRA Annuities contracts do not constitute trusts under Pennsylvania law, IRAs in the form of annuity and endowment contracts cannot generally constitute trusts under relevant state law. However, and as noted in a preceding footnote, a state might pass a statute that is construed such that IRA annuity and endowment contracts are classified as trusts for purposes of state law. *See supra* note 9.

§§ 1001–1461, nor, for that matter, any body of federal law, controls in regard to the requirements for the establishment of a valid trust, only those IRAs that constitute trusts under relevant state law constitute trusts within the meaning of § 541(c)(2). For the reasons set forth above, the IRA Annuities do not constitute trusts under Pennsylvania law. *See supra* pp. 862–64. Therefore, the IRA Annuities also do not constitute trusts within the meaning of § 541(c)(2).[16] Consequently, the IRA Annuities do not satisfy the first *Yuhas* "exclusion" requirement.

**B. *Whether the fund premiums paid to purchase the IRA Annuities represent beneficial interests of Fulton in trusts?***

Because, as explained in the preceding section of this opinion, the IRA Annuities do not constitute trusts within the meaning of § 541(c)(2), the "funds in the IRA [Annuities]" necessarily cannot represent beneficial interests in trusts. Furthermore, since John Hancock solely owns both legal title to, and the beneficial interest in, the funds which are representative of both the premiums paid by Fulton and the assets that will ultimately be utilized to satisfy John Hancock's contractual obligations to Fulton (i.e., the "funds in the IRA [Annuities]"), *see supra* pp. 863–64, Fulton necessarily cannot actually retain any beneficial interest in said funds in any event, thereby reinforcing the conclusion in the preceding sentence. Consequently, the IRA Annuities also cannot satisfy the second *Yuhas* "exclusion" requirement.

**C. *Whether any transfer restriction contained in § 8124(b)(1)(ix) is enforceable under applicable nonbankruptcy law?***

■■ Although the Court need not address *Yuhas* "exclusion" requirement (5)—i.e., that the transfer restriction at issue must be enforceable under applicable nonbankruptcy law—given that the IRA Annuities cannot meet *Yuhas* "exclusion" requirements (1) and (2), the Court nevertheless feels obliged to say a few words regarding whether said annuities can satisfy said requirement so as to complete the analysis called for in *Yuhas*. *Yuhas* "exclusion" requirement (5) can only be met by the IRA Annuities if the transfer restriction contained within § 8124(b)(1)(ix) is "enforceable under applicable nonbankruptcy law." However, the nonbankruptcy law under which said transfer restriction can be enforced is § 8124(b)(1)(ix) itself, in conjunction with Pa.R.C.P. No. 3123–3123.1, 42 Pa.C.S.A. Unfortunately for Fulton, § 8124(b)(1)(ix) and Pa.R.C.P. No. 3123–3123.1 cannot be

**16.** With respect to the issue of whether the IRA Annuities constitute trusts within the meaning of § 541(c)(2), Fulton, in his brief in support of his motion for summary judgment, does little more than blindly assert that said annuities constitute such trusts. The only substantive assertion that Fulton appears to make regarding this particular issue can be found on page 9 of said brief, wherein Fulton contends that the IRA Annuities constitute trusts within the meaning of § 541(c)(2) because " § 8124 creates a constructive trust as it serves as the required restriction on transferability of the Debtor's interest in same." While the preceding assertion is anything but clear, to the extent that Fulton contends that the funds presently possessed by John Hancock are somehow the subject of a constructive trust in his favor must be rejected outright given that (a) "a constructive trust exists whenever one holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it," 38 P.L.E. *Trusts* § 101 at 618, (b) "[a] constructive trust arises out of circumstances evidencing either fraud, accident, mistake, duress[,] or undue influence," *Id.* at § 102 at 619, (c) John Hancock retains ownership over the aforesaid funds but absent any equitable duty to convey the same to Fulton since, by virtue of John Hancock's contractual liability to Fulton, John Hancock will not be unjustly enriched by retaining said funds, and (d) circumstances evidencing fraud, accident, mistake, duress, or undue influence with respect to Fulton's relationship with John Hancock are not even alleged by Fulton, much less demonstrated with the minimal sufficiency necessary to avoid an adverse summary judgment.

"applicable" in the present case because (a) "exemption statutes [such as § 8124(b)(1)(ix) and Pa.R.C.P. No. 3123–3123.1 are construed] as applicable to any process or proceeding by which it is sought to subject the property [that is the subject of said exemption statutes *provided that* ] ... *the statute[s] do[ ] not clearly exclude such a construction,*" 16 P.L.E. *Exemptions* § 20 at 261 (West 1959) (emphasis added), (b)- 11 U.S.C. § 522(b) makes clear that state exemption provisions only apply in a bankruptcy case if a bankruptcy debtor *elects* to take those exemptions allowed under state, local, and federal nonbankruptcy law, *see* 11 U.S.C.A. § 522(b) (West 1993 & Supp. 1999), (c) § 8124(b)(1)(ix) and Pa.R.C.P. No. 3123–3123.1 can only be construed as exemption provisions, *see Martich,* Bankr. No. 97–23010–BM at 5, 10, which means that they cannot be construed as applicable to the bankruptcy process unless a bankruptcy debtor elects to take advantage of them as provided in § 522(b), *see Id.* at 10–11, (d) a bankruptcy debtor cannot take both the federal exemptions offered in § 522(d) and those exemptions allowed under state, local, and federal nonbankruptcy law, *see, e.g., Yuhas,* 104 F.3d at 615 n. 2, and (e) Fulton has elected to take the federal exemptions offered under 11 U.S.C. § 522(d), thereby (i) precluding his election of state exemptions under § 522(b)(2), and (ii) rendering inapplicable in the present case § 8124(b)(1)(ix) and Pa.R.C.P. No. 3123–3123.1. *See Martich,* Bankr.No. 97–23010–BM at 11.

The Court notes that N.J.S.A. § 25:2–1(b), in contrast to § 8124(b)(1)(ix) and Pa.R.C.P. No. 3123–3123.1, potentially can be construed such that it can be activated by a debtor in bankruptcy, and thus can constitute applicable nonbankruptcy law, even if said debtor elects to take the aforesaid federal exemptions because N.J.S.A. § 25:2–1(b) provides, in pertinent part, that "any property held in a qualifying trust and any distributions from a qualifying trust ... shall be *excluded from the estate in bankruptcy.*" *See* N.J.S.A. § 25:2–1(b) (emphasis added); *Martich,* Bankr.No. 97–23010–BM at 5 (N.J.S.A. § 25:2–1(b) "is commonly characterized as an 'exclusion' type law"). In order to make § 8124(b)(1)(ix) and Pa.R.C.P. No. 3123–3123.1 similarly "applicable" under § 541(c)(2), Pennsylvania will need to amend said statutory provisions to include the "exclusionary" language contained in N.J.S.A. § 25:2–1(b).[17] Unfortunately for Fulton, however, § 8124(b)(1)(ix) and Pa. R.C.P. No. 3123–3123.1 are presently not "applicable" under Fulton's instant circumstances, which means that (a) the transfer restriction contained within § 8124(b)(1)(ix) cannot be "enforceable under applicable nonbankruptcy law," and (b) the IRA Annuities do not satisfy the fifth *Yuhas* "exclusion" requirement.

### D. *Summary.*

Because the IRA Annuities do not satisfy *Yuhas* "exclusion" requirements (1), (2), and (5) above, the IRA Annuities are not excluded from Fulton's bankruptcy estate pursuant to § 541(c)(2),[18] which means that

---

**17.** This Court will not comment upon the constitutionality of the "exclusionary" language contained in N.J.S.A. § 25:2–1(b) other than to note that the constitutionality of said language has been called into question by several courts. *See In re Van Nostrand,* 183 B.R. 82, 85 (Bankr.D.N.J.1995) (if N.J.S.A. § 25:2–1(b) were construed as an "exclusion" statute it would be preempted by the Bankruptcy Code), *overruled on different grounds by Yuhas,* 104 F.3d 612 (3rd Cir.1997); *In re Harless,* 187 B.R. 719, 725–27 (Bankr. N.D.Ala.1995) (commenting upon similar language found in an Alabama state statute).

**18.** Because the Court concludes that § 8124(b)(1)(ix) does not operate to exclude any portion of the IRA Annuities from Fulton's bankruptcy estate pursuant to § 541(c)(2), the Court need not address the Trustee's alternative argument that Fulton cannot, in any event, exclude from his bankruptcy estate via § 8124(b)(1)(ix) more than $15,000 of the total rollover contributions that he made to the IRA Annuities in 1993 (Fulton made respective rollover contributions to the IRA Annuities in 1993 of $16,-746.55, $60,083.88, and $42,399.44, for a to-

said annuities constitute property of Fulton's bankruptcy estate. Consequently, Fulton may not retain any portion of the IRA Annuities unless they can be exempted from his bankruptcy estate pursuant to the federal exemption afforded by 11 U.S.C. § 522(d)(10)(E).

**II. *Whether Fulton can exempt the IRA Annuities under § 522(d)(10)(E)?***

11 U.S.C. § 522(d)(10)(E) provides, in pertinent part, that a debtor may exempt his or her

> right to receive—
>
> . . .
>
> a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

tal contribution in 1993 of $119,229.87). Nevertheless, the Court will need to address the proper application of § 8124(b)(1)(ix) in the event that Fulton amends his exemptions so as to take advantage of Pennsylvania state exemption law such as § 8124(b)(1)(ix) via 11 U.S.C. § 522(b)(2). Therefore, the Court holds that, if Fulton does so amend his exemptions, then the $15,000 restriction, imposed pursuant to § 8124(b)(1)(ix)(B), shall apply to the exemption by Fulton of the $119,229.87 in rollover contributions notwithstanding the amendment of § 8124(b)(1)(ix)(B) on February 18, 1998, which amendment operates to, *inter alia,* protect rollover contributions from said $15,000 restriction. The preceding conclusion is dictated by the fact that (a) Fulton "may only exempt property 'that is exempt under Federal law . . . or State or local law *that is applicable on the date of the filing of the petition,'*" *In re Allen,* 228 B.R. 132, 134 n. 2 (Bankr.W.D.Pa.1998) (citing 11 U.S.C. § 522(b)(2)(A) and *In re Gardner,* 139 B.R. 460, 462 (Bankr.E.D.Ark.1991)), (b) "the [aforesaid] amendment [to § 8124(b)(1)(ix)(B) ] was explicitly made effective [only] as of February 18, 1998," *Id.,* which date is subsequent to the instant debtors' bankruptcy petition filing date of August 7, 1997, (c) said amendment cannot be applied retroactively back to August 7, 1997, despite Fulton's contrary pleas since a clear and manifest intent for such retroactive application has not been conveyed by the Pennsylvania General Assembly, *see* 1 Pa.C.S.A. §§ 1926 and 1953 (these statutory provisions

11 U.S.C.A. § 522(d)(10)(E) (West 1999). Fulton maintains that he may exempt the IRA Annuities in their entirety pursuant to § 522(d)(10)(E). The Trustee contends otherwise, however, arguing primarily that the IRA Annuities may not be exempted at all under § 522(d)(10)(E) because (a) an IRA is not similar to "a stock bonus, pension, profit-sharing, [or] annuity . . . plan or contract," and (b) Fulton did not have, as of his petition filing date, the present right to receive payment from said annuities on account of either having reached age 59½, death, or disability. The Trustee secondarily argues that, even if Fulton may potentially exempt a portion of the IRA Annuities pursuant to § 522(d)(10)(E), said annuities may not be exempted in their entirety under said provision because a portion thereof is not "reasonably necessary for the support of" Fulton and his wife. After considering the

operate to render inapplicable to the application of § 8124(b)(1)(ix) any axiom that a court shall apply the law in effect at the time that it renders its decision), and (d) the Third Circuit has ruled that the version of § 8124(b)(1)(ix) that existed on August 7, 1997, did not differentiate between rollover contributions and other contributions, *see In re Barshak,* 106 F.3d 501, 504 (3rd Cir.1997), which means that the aforesaid $15,000 restriction must be applied herein to any rollover contributions that were made by Fulton in 1993.

The Court also holds, however, that $45,000 of Fulton's $119,229.87 in aggregate rollover contributions in 1993 may be exempted via § 8124(b)(1)(ix) as said provision existed on August 7, 1997, because (a) Fulton made rollover contributions in 1993 to three separate funds (i.e., the three IRA Annuities), with said contributions to each fund exceeding $15,000 in amount, and (b) this Court has previously held that the annual $15,000 restriction in § 8124(b)(1)(ix)(B) shall be applied separately to each of several different funds vis-a-vis contributions that are made to said funds. *See Allen,* 228 B.R. at 139–40 & 144. Therefore, if Fulton amends his exemptions so as to take advantage of § 8124(b)(1)(ix) via § 522(b)(2), he may exempt $45,000 in total rollover contributions to the IRA Annuities, while the balance of said contributions, or $74,229.87, must be exposed to the Trustee for distribution from Fulton's bankruptcy estate.

preceding arguments of the Trustee, which arguments are addressed in detail below, the Court concludes that Fulton may exempt the IRA Annuities under § 522(d)(10)(E) to the extent that said annuities are "reasonably necessary for the support" of himself and his dependents.

### A. *Whether an IRA is similar to "a stock bonus, pension, profit-sharing, [or] annuity . . . plan or contract"?*

■ With respect to this particular issue, this Court has previously held, in *In re Gralka*, 204 B.R. 184 (Bankr.W.D.Pa. 1997),

> that IRAs[, as a matter of law,] are significantly similar to "stock bonus, pension, profit sharing, [or] annuity . . . plan[s] or contract[s]," and that, because an IRA beneficiary has the right to receive payment from an IRA without imposition of the ten (10) percent tax penalty on the basis of, *inter alia*, reaching age 59 ½, death, or disability, said right to [penalty-free] payment is "on account of illness, disability, death, age, or length of service."

*Id.* at 187–88. The Court also held in *Gralka* that, to the extent that the right to receive payment from an IRA is predicated solely upon payment by the IRA beneficiary of the ten percent tax penalty, said payment right is not "on account of illness, disability, death, age, or length of service" and, thus, cannot qualify for exemption under § 522(d)(10)(E). *See Id.* at 188. The Trustee, in his brief, concedes that he is fully aware of the Court's preceding holding in *Gralka.* Nevertheless, the Trustee (a) refuses to capitulate on the issue of whether an IRA is similar to "a stock bonus, pension, profit-sharing, [or] annuity . . . plan or contract," and (b) cites to *In re Pauquette*, 38 B.R. 170 (Bankr. D.Vt.1984), and *In re Herbert*, 140 B.R. 174 (Bankr.N.D.Ohio 1992), as supportive of the position contrary to that which this Court expressed in *Gralka.* Unfortunately for the Trustee, the Court, while rendering its decision in *Gralka*, expressly consid-ered, and then rejected, the contrary rulings in *Pauquette* and *Herbert. See Gralka*, 204 B.R. at 187. Quite simply, the Court cannot identify any reason why it would now wish to deviate from its original decision rejecting said contrary rulings in *Pauquette* and *Herbert.*

■ The Trustee also argues that an IRA cannot be similar to "a stock bonus, pension, profit-sharing, [or] annuity . . . plan or contract [where payment is received] on account of illness, disability, death, age, or length of service" because an IRA beneficiary, pursuant to I.R.C. § 72(t)(2)(A)(iv), can receive distributions from an IRA without (a) imposition of the ten percent tax penalty generally incurred for early distributions from an IRA, and (b) reference to said beneficiary's health, disability, death, age, or length of service. The Court rejects this particular argument by the Trustee also, however, and adopts as supportive of said rejection the rationale of the Fifth Circuit in *In re Carmichael*, 100 F.3d 375 (5th Cir.1996). The Fifth Circuit in *Carmichael* held that:

> The plain language of . . . [§ 522(d)(10)(E)] supports the conclusion that control by a debtor does not destroy exemptibility. True, to be exempt, the right to receive a payment under a "similar plan or contract" must be "on account of illness, disability, death, age, or length of service." *Yet nowhere do the words "only" or "solely" appear. The language of the subject section does not express a requirement that the right to receive a payment under a "similar plan or contract" be conditioned "only" or "solely" or "exclusively" on one of the five listed events* [(i.e., a debtor's illness, disability, death, age, or length of service) ]. None dispute that the list is exclusive and mandatory in that (1) the right to receive payment under a "similar plan or contract" must be triggered by at least one of the five events, and (2) the right to receive the payment cannot be either totally unfet-

tered or not triggered by *inter alia* one of the five listed events.

An entirely separate question, however, is whether exemptibility is destroyed if, despite the right to receive the payment being triggered by one or more of the five listed events, such right can be triggered as well by some additional event, occurrence, or status that is not listed. Simply stated, the Trustee's argument is that the presence of such an additional factor somehow blocks or destroys exemptibility despite the presence of one of the five requisite events. We disagree: *As long as the right to receive a payment under a plan or contract can be triggered by one or more of the five listed events, and is therefore exemptible, the fact that payments can also be triggered by some additional factor—or absence of some additional factor—cannot destroy exemptibility. Once one (or more) of the listed events is found to apply, it (or they) need not be the sole prerequisite to all rights to receive payment. Neither need the listed event (or events) block the right to receive payment under some other situation.*

*Id.* at 378–79 (footnote omitted) (emphasis added); *see also Gralka,* 204 B.R. at 188 (citing to the preceding passage from *Carmichael* in support of the holding that an IRA is not rendered a dissimilar plan or contract merely because of a debtor beneficiary's right to, *inter alia,* receive an early withdrawal from an IRA that results in an imposition of the ten percent tax penalty). On the strength of the preceding rationale from *Carmichael,* this Court holds that an IRA is not rendered a dissimilar plan or contract merely because of a debtor beneficiary's right to, *inter alia,* receive a penalty-free distribution from an IRA, pursuant to I.R.C. § 72(t)(2)(A)(iv), without reference to said beneficiary's health, disability, death, age, or length of service.

Therefore, an IRA is similar to "a stock bonus, pension, profit-sharing, [or] annuity . . . plan or contract."

**B. *Whether Fulton, as of his petition filing date, had the present right to receive payment from the IRA Annuities "on account of illness, disability, death, age, or length of service"?***

With respect to this particular issue, this Court has previously held, once again in *Gralka,* that for a debtor to exempt payments from a retirement plan or contract under § 522(d)(10)(E) given the Third Circuit's decisions in *In re Clark,* 711 F.2d 21, 23 (3rd Cir.1983), and *Velis v. Kardanis,* 949 F.2d 78, 82 (3rd Cir.1991), said debtor need not, as of the date of his or her petition filing, presently be in the process of receiving such payments provided that (a) said "debtor is [then] presently entitled to receive said payments, and (b) with respect to an IRA in particular, . . . such right to payment [then] presently exists because the debtor has reached age 59½, died, or become disabled, thereby permitting . . . [said] debtor to avoid imposition of the ten percent tax penalty." *See Gralka,* 204 B.R. at 189. Fulton, at the time of the instant debtors' bankruptcy petition filing, was neither age 59½ or dead. Nevertheless, Fulton explicitly contends in his brief that he may exempt the IRA Annuities under § 522(d)(10)(E) simply because he was, as of the date of his petition filing, presently entitled to receive payment from the IRA Annuities penalty-free in the manner provided for under I.R.C. § 72(t)(2)(A)(iv) (i.e., distribution "as part of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the . . . [IRA beneficiary] or the joint lives (or joint life expectancies) of such . . . [beneficiary] and his designated beneficiary") without regard to whether he had then reached age 59½, died, or become disabled. Furthermore, Fulton, in his brief, also appears to implicitly contend that (a) he was, as of his petition filing

date, presently entitled to receive payment from the IRA Annuities penalty-free on account of (i) a disabling injury that he previously sustained and from which he continues to suffer, and (ii) his having reached age 55, and (b) an exemption of the IRA Annuities under § 522(d)(10)(E) is justified in light of said disability and his having then already reached age 55. *See* Fulton's Brief, at 15 (recitation of I.R.C. § 72(t)(2)(A)(iii) & (v) is highlighted). For the reasons that follow, the Court concludes that none of the preceding contentions by Fulton serve to support his exemption of the IRA Annuities under § 522(d)(10)(E).

■ First, Fulton recognizes that the Court previously held in *Gralka* that a debtor cannot satisfy the criteria for an exemption under § 522(d)(10)(E) merely because he or she possessed, as of his or her petition filing date, a present right to receive payment from an IRA penalty-free in the manner provided for under I.R.C. § 72(t)(2)(A)(iv). The Court arrived at the preceding holding in *Gralka* because (a) "a right to receive payment in such manner, by itself, cannot be classified as a 'right to receive . . . payment . . . on account of illness, disability, death, age, or length of service,'" *Gralka*, 204 B.R. at 189 n. 5, and (b) only payment rights "predicated upon either 'illness, disability, death, age, or length of service'" can be exempted under § 522(d)(10)(E). *See Id.; see also Carmichael*, 100 F.3d at 379 ("None dispute that . . . the right to receive payment under a 'similar plan or contract' must be triggered by at least one of the five events [set forth

in § 522(d)(10)(E) (i.e., 'illness, disability, death, age, or length of service')]"). Although Fulton, in his brief, quarrels with the preceding holding from *Gralka*, the Court cannot (a) conceive of any reason why it would wish to deviate from said holding at this time, and (b) identify any sound basis for distinguishing, with respect to this particular issue, the instant case from *Gralka*. Therefore, the Court shall continue to adhere to said prior holding in *Gralka*, which means that Fulton may not exempt the IRA Annuities under § 522(d)(10)(E) simply because, as of the date when his petition was filed, he was presently entitled to receive payment from the IRA Annuities penalty-free in the manner provided for under I.R.C. § 72(t)(2)(A)(iv).[19]

■ Second, the Court concludes, and Fulton apparently recognizes, that Fulton could not have presently been entitled, as of his petition filing date, to penalty-free distribution from the IRA Annuities by virtue of a disability unless he then satisfied I.R.C. § 72(t)(2)(A)(iii), which statutory provision, in turn, could not have been satisfied in the instant matter unless Fulton was then disabled within the meaning of I.R.C. § 72(m)(7). *See* I.R.C. § 72(t)(2)(A)(iii) (West 1999). The Court presumes that Fulton, by implicitly arguing that he had a disability that, as of his petition filing date, presently entitled him to receive penalty-free payments from the IRA Annuities, also implicitly contends that said enabling disability (a) was that which he allegedly suffers from as a result of a fall that occurred at some point in

19. I.R.C. § 72(t)(2), in addition to providing for a penalty-free payment from an IRA under the "equal periodic payment" scenario described in I.R.C. § 72(t)(2)(A)(iv), also provides for penalty-free payment from an IRA on account of several other "events" that are not among the five triggering events listed within § 522(d)(10)(E). *See, e.g.,* I.R.C. § 72(t)(2)(B) (distributions for medical care expenses); I.R.C. § 72(t)(2)(D) (distributions to unemployed beneficiaries for health insurance premiums); I.R.C. § 72(t)(2)(E) (distributions for higher education expenses); I.R.C. § 72(t)(2)(F) (distributions for first home purchases). For the same reason that a debtor's right, as of his or her bankruptcy petition filing, to receive penalty-free payment from his or her IRA under the "equal periodic payment" scenario described in I.R.C. § 72(t)(2)(A)(iv) does not, by itself, support an exemption of said IRA under § 522(d)(10)(E), a debtor's right to receive penalty-free payment from said IRA on account of one of the other events referred to in the preceding sentence also does not, by itself, support exemption under § 522(d)(10)(E).

1995, *see supra* p. 859, and (b) comes within the meaning of I.R.C. § 72(m)(7). I.R.C. § 72(m)(7) provides, in pertinent part, that "an individual shall be considered to be disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." I.R.C. § 72(m)(7) (West 1999). According to Treasury Regulation § 1.72–17A(f)(1), "[t]he substantial gainful activity to which [I.R.C. § ] 72(m)(7) refers is the activity, or a comparable activity, in which the individual customarily engaged *prior to the arising of the disability* or prior to retirement if the individual was retired at the time the disability arose." Treas.Reg. 1.72–17A(f)(1) (1979) (emphasis added); *see also In re Black,* 204 B.R. 701, 703 (Bankr.W.D.Tex.1996) (applying Treas. Reg. 1.72–17A(f)(1)). Applying Treasury Regulation § 1.72–17A(f)(1) to Fulton's alleged disability, the Court must first conclude that the type of employment that Fulton engaged in subsequent to his termination with Nabisco Brands, rather than that which he enjoyed as a salesperson with Nabisco Brands, constitutes the activity in which Fulton "customarily engaged" prior to the arising of Fulton's alleged disability because (a) Fulton's employment with Nabisco Brands ended at some point prior to late 1993, *see supra* p. 859, which is more than one year prior to when the alleged disabling injury arose, and (b) the nature of Fulton's employment subsequent to his termination from Nabisco Brands is markedly different from the nature of his employment with Nabisco Brands. *See supra* p. 859. Furthermore, the Court must conclude that Fulton's alleged disabling injury in 1995 did not preclude him from subsequently engaging in any sub-

stantial gainful activity because Fulton continued to work subsequent to said injury—and, in fact, continues to work to the present time—in employment similar in nature to that which he engaged in during the period between his termination with Nabisco Brands and the occurrence of said injury in 1995. *See supra* p. 859. Therefore, the Court must conclude that, as of Fulton's petition filing date, (a) Fulton's alleged disability resulting from his fall in 1995, even if proven, did not render Fulton disabled within the meaning of I.R.C. § 72(m)(7), (b) Fulton consequently did not satisfy I.R.C. § 72(t)(2)(A)(iii), and (c) Fulton was not presently entitled to penalty-free distribution from the IRA Annuities by virtue of a disability.

Finally, Fulton must rely upon I.R.C. § 72(t)(2)(A)(v) when he implicitly contends that, as of his petition filing date, he was presently entitled, by virtue of his then having reached age 55, to receive penalty-free payment from the IRA Annuities. I.R.C. § 72(t)(2)(A)(v) allows for penalty-free "[d]istributions which are ... made to an employee after separation from service after attainment of age 55." I.R.C. § 72(t)(2)(A)(v) (West 1999). Unfortunately for Fulton, "[I.R.C. § 72(t)(2) ](A)(v) ... shall not apply to distributions from an individual retirement plan." *See* I.R.C. § 72(t)(3)(A) (West 1999); *Murillo v. Commissioner,* 75 T.C.M. (CCH) 1564 n. 2 (1998) (same); *Edmonds v. Commissioner,* 76 T.C.M. (CCH) 710 (1998) (same); *Peaslee v. Commissioner,* 77 T.C.M. (CCH) 1195 n. 1 (1999) (same).[20] Because I.R.C. § 72(t)(2)(A)(v) cannot apply to IRAs, the only way that an IRA beneficiary can obtain penalty-free payments from an IRA on account of age, as set forth in this Court's *Gralka* decision, is if said beneficiary first reaches age 59½. Therefore, Fulton was not, by virtue of his having

---

**20.** The exception to the ten percent penalty tax provided in I.R.C. § 72(t)(2)(A)(v) applies to distributions made from either (a) a qualified plan under I.R.C. § 401, or (b) a tax-sheltered annuity (TSA) arrangement (i.e., an annuity purchased by a public school or an

organization that is exempt from tax under I.R.C. § 501(c)(3)). *See* 2 Stand.Fed. Tax Rep. (CCH 1999) ¶ 6140.0945 at 19,054. An IRA is neither a qualified plan under I.R.C. § 401, *see supra* note 14, nor a TSA.

reached age 55 prior to the date of his petition filing, thereby presently entitled, as of the date of said petition filing, to receive penalty-free payment from the IRA Annuities.

For the foregoing reasons, and consistent with this Court's prior decision in *Gralka,* the Court is constrained to conclude that Fulton did not, as of the date of his petition filing, presently possess the right to receive penalty-free payment from the IRA Annuities on account of either having reached age 59½, death, or disability. However, does this conclusion dictate that Fulton may not exempt any portion of the IRA Annuities under § 522(d)(10)(E)?

■ Given Fulton's pertinent circumstances, the Court answers the preceding question in the negative and holds that Fulton may exempt the IRA Annuities under § 522(d)(10)(E) to the extent that said annuities are "reasonably necessary for the support" of himself and his dependents. In so holding, the Court recognizes, as it did in *Gralka,* that it "'is constrained to adhere to the holding[s] of *In re Clark* [and *Velis v. Kardanis* ] where ... [they are] applicable.'" *Gralka,* 204 B.R. at 189 (citing *In re Brewer,* 154 B.R. 209, 213 (Bankr.W.D.Pa.1993)). However, and as the Court also noted in *Gralka,* where a debtor who owns IRAs is nearing age 59½ but has not yet, as of his or her petition filing date, reached such age,

> the rationale for the Third Circuit's decision in *Clark* —i.e., "[t]he exemption of *future* payments ... [is not permissible under § 522(d)(10)(E) because future payments] demonstrate[ ] a concern for the debtor's long-term security[,] which [concern] is absent from the statute," *Clark,* 711 F.2d at 23 (emphasis theirs)—would seem not to apply because future payments then would not truly address only a debtor's concern for his or her long-term security. Rather, in this particular instance it would seem that future payments would also constitute a means by which a debtor could also meet his or her relative short-term

needs. Therefore, this Court cannot conclude with certainty that, in that situation, the Third Circuit's decisions in *Clark* and *Velis* would control to dictate denial of a debtor's exemption of payment rights under § 522(d)(10)(E).

*Gralka,* 204 B.R. at 189–190. Additionally, the Court notes that the Third Circuit, in both *Clark* and *Velis,* was not faced with a debtor nearing age 59½ at the time of his or her petition filing. *See Clark,* 711 F.2d at 22 (debtor was only age 43 at time of petition filing); *Velis,* 949 F.2d at 82 (debtor was age 63 at time of petition filing and, thus, already past age 59 ½). As well, this Court in *Gralka* did not need to resolve the aforesaid incompatibility between the Third Circuit's rationale for, and its strict holdings in, the *Clark* and *Velis* decisions given that the *Gralka* debtors were only age forty-five (45) and age forty-six (46) at the time of their respective petition filing. However, the Court is now presented with a debtor who was only three and one-half (3½) years shy of age 59½ at the time of his petition filing. So as to best reconcile the Third Circuit's holdings in *Clark* and *Velis,* its rationale therein for its appendage to the plain language of § 522(d)(10)(E) (i.e., the word "present" before the already-existent phrase "right to receive"), and the pending situation in the instant case, this Court holds that a debtor/IRA beneficiary who has reached at least age 55 by the time of his or her petition filing is then close enough to age 59½ so that said debtor (a) shall be deemed to then have a sufficiently present right to receive payment from his or her IRA, and (b) consequently may potentially exempt said IRA under § 522(d)(10)(E).

The Court, by adopting age 55 as the age at which a debtor shall be deemed to have a sufficiently present right to receive payment from his or her IRA, does justice to the Third Circuit's decisions in *Clark* and *Velis* because an IRA beneficiary/bankruptcy debtor, after he or she has reached the age of 55, is close enough to age 59½ so that one can properly conclude

that future payments to be received penalty-free by said beneficiary/debtor from his or her IRA will constitute a means by which he or she will meet his or her relative short-term needs. Indeed, if the Court were to conclude otherwise and disallow *per se* an exemption of such funds to a bankruptcy debtor who has already reached age 55, then said debtor, given the urgency for retirement savings when one attains the age of 55, would be forced to allocate from his or her wages, *which wages would otherwise be utilized for his or her present needs,* an amount to at least partially replenish the IRA funds seized in bankruptcy. Furthermore, the Court concludes that the preceding logic does not apply equally to debtors who are younger than age 55 because, although said younger debtors may also have an incentive and desire to save for future retirement, their urgency in providing for their retirement is (a) simply not as severe as is that of a debtor who has reached age 55, and (b) thus not such that they will necessarily feel the need to forego present needs so as to provide for future retirement. The Court's decision can also be squared with the plain language of § 522(d)(10)(E) because, without question, an IRA beneficiary/bankruptcy debtor between the ages of 55 and 59½ presently has, as do all IRA beneficiary/bankruptcy debtors, a present right to receive a future penalty-free payment from his or her IRA. Finally, the Court borrows from I.R.C. § 72(t)(2)(A)(v) to arrive at age 55 as the precise age at which a debtor shall be deemed to have a sufficiently present right to receive payment from his or her IRA because (a) I.R.C. § 72(t)(2)(A)(v) operates to except from penalty taxation distributions from plans other than IRAs if a plan beneficiary has reached age 55, and (b) even though I.R.C. § 72(t)(2)(A)(v) does not so apply to except from penalty taxation distributions from an IRA, the Court detects neither reason nor necessity for discriminating, *within the bankruptcy context,* against beneficiaries of IRAs after said beneficiaries have reached, and have also abstained from withdrawing funds from said plans prior to reaching, age 55. Of course, because I.R.C. § 72(t)(2)(A)(v) does not apply to IRA distributions so as to except said distributions from penalty taxation, an IRA beneficiary/bankruptcy debtor between the ages of 55 and 59½ will still be subjected, by virtue of I.R.C. § 72(t), to penalty taxation unless said debtor (a) elects to receive distribution from his or her IRA in the fashion described in I.R.C. § 72(t)(2)(A)(iv) (ie., "series of substantially equal periodic payments"), or (b) waits until he or she reaches age 59½ before withdrawing funds from his or her IRA.

Applying the Court's preceding ruling to the instant matter, Fulton, because he was age 56 when the debtors filed their bankruptcy petition commencing the instant case, had at that time a sufficiently present right to receive payment from the IRA Annuities such that Fulton may potentially exempt said annuities under § 522(d)(10)(E).

### C. *Whether, and to what extent, the IRA Annuities are reasonably necessary for the support of Fulton and his dependents?*

 Although Fulton may potentially exempt the IRA Annuities under § 522(d)(10)(E), the Court cannot accurately ascertain, without benefit of a trial, whether, and to what extent, the IRA Annuities are reasonably necessary for the support of Fulton and his dependents. Therefore, a trial for the sole purpose of determining the reasonable necessity of the IRA Annuities vis-a-vis the support requirements for Fulton and his dependents shall be necessary before the Court can finally rule on the propriety of Fulton's exemption of said annuities under § 522(d)(10)(E). Given the necessity for such a trial, and since the Trustee's turnover request for, and the Trustee's objection to Fulton's exemption of, the IRA Annuities turn on the propriety of Fulton's exemption under § 522(d)(10)(E), the Court must deny with prejudice both par-

ties' instant motions for summary judgment.

## CONCLUSION

Fulton, on the strength of the Third Circuit's *Yuhas* decision and 42 Pa.C.S.A. § 8124(b)(1)(ix), attempts to exclude the IRA Annuities from his bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2) notwithstanding his decision to simultaneously take, with respect to the remainder of his assets, the federal exemptions offered in 11 U.S.C. § 522(d) rather than those exemptions afforded by state, local, and federal nonbankruptcy law. However, *Yuhas* sets forth five requirements that must be met before an IRA can be excluded under § 541(c)(2) and the IRA Annuities satisfy neither the first, second, nor fifth of said "exclusion" requirements notwithstanding the transfer restriction contained in 42 Pa. C.S.A. § 8124(b)(1)(ix). Consequently, the IRA Annuities are not excluded from Fulton's bankruptcy estate pursuant to § 541(c)(2), which means that said annuities constitute property of Fulton's bankruptcy estate. Nevertheless, Fulton may potentially exempt the IRA Annuities under § 522(d)(10)(E) because (a) an IRA is similar to "a stock bonus, pension, profit-sharing, [or] annuity ... plan or contract," and (b) Fulton, at the time of the debtors' petition filing, had a sufficiently present right to receive payment from the IRA Annuities. However, before the Court can finally rule on the propriety of Fulton's exemption of the IRA Annuities under § 522(d)(10)(E), the Court must first determine whether, and to what extent, the IRA Annuities are reasonably necessary for the support of Fulton and his dependents. Because the latter determination requires a trial before this Court, and since the Trustee's turnover request for, and the Trustee's objection to Fulton's exemption of, the IRA Annuities turn on the propriety of Fulton's exemption under § 522(d)(10)(E), summary judgment in favor of either party with respect to said turnover request and exemption objection is inappropriate at this time. Therefore, the parties' summary judgment motions both shall be **DENIED WITH PREJUDICE.**

Despite the interlocutory nature of the Court's decision denying both parties' summary judgment motions, if either of the, or both, parties choose to seek, and then ultimately obtain, leave from the U.S. District Court to appeal said decision, then this Court will grant a stay of said decision pending such appeal, especially given that certain of the significant issues dealt with in this matter appear not to have been precisely dealt with thus far by the Third Circuit.

An appropriate order will be entered.

## ORDER OF COURT

**AND NOW,** this **3rd day of November, 1999,** upon consideration of (a) the instant Trustee's adversary complaint wherein, *inter alia,* the Trustee seeks, pursuant to 11 U.S.C. § 542(a), the turnover of three separate individual retirement annuities (hereafter the "IRA Annuities") which are presently in the possession of Ronald Fulton, one of the above-captioned debtors, (b) the Trustee's objection to Fulton's exemption of the IRA Annuities under 11 U.S.C. § 522(d)(10)(E), (c) Fulton's responses to the Trustee's complaint and exemption objection, (d) the Trustee's motion to amend his adversary complaint so as to delete Counts 1 and 3, leaving therein Count 2 which sets forth the aforesaid turnover request, (e) the parties' summary judgment motions with respect to both the Trustee's turnover request, as set forth in his adversary complaint, and the Trustee's objection exemption, and (f) the parties' responses to, and briefs in support of their respective positions regarding, said summary judgment motions; and subsequent to notice and a hearing on the matter held on May 6, 1999; and in accordance with the accompanying memorandum opinion of this Court dated **November 3, 1999,** it is **hereby ORDERED, ADJUDGED, AND DECREED** that (a) the parties' summary

judgment motions shall be, and are, **DENIED WITH PREJUDICE,** and (b) the Trustee's motion to amend his adversary complaint so as to delete Counts 1 and 3 is **GRANTED.** In ruling as the Court does, the Court draws the following conclusions:

1. Fulton, on the strength of the Third Circuit's *Yuhas* decision and 42 Pa. C.S.A. § 8124(b)(1)(ix), attempts to exclude the IRA Annuities from his bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2) notwithstanding his decision to simultaneously take, with respect to the remainder of his assets, the federal exemptions offered in 11 U.S.C. § 522(d) rather than those exemptions afforded by state, local, and federal nonbankruptcy law. However, *Yuhas* sets forth five requirements that must be met before an IRA can be excluded under § 541(c)(2) and the IRA Annuities satisfy neither the first, second, nor fifth of said "exclusion" requirements notwithstanding the transfer restriction contained in 42 Pa.C.S.A. § 8124(b)(1)(ix).

2. The IRA Annuities consequently are not excluded from Fulton's bankruptcy estate pursuant to § 541(c)(2), which means that said annuities constitute property of said estate.

3. Fulton may potentially exempt the IRA Annuities under § 522(d)(10)(E) because (a) an IRA is similar to "a stock bonus, pension, profit-sharing, [or] annuity ... plan or contract," and (b) Fulton, at the time of the debtors' petition filing, had a sufficiently present right to receive payment from the IRA Annuities.

4. Before the Court can finally rule on the propriety of Fulton's exemption of the IRA Annuities under § 522(d)(10)(E), a trial must be conducted regarding whether, and to what extent, the IRA Annuities are reasonably necessary for the support of Fulton and his dependents.

5. Since the Trustee's turnover request for, and the Trustee's objection to Fulton's exemption of, the IRA Annuities turn on the propriety of Fulton's exemption under § 522(d)(10)(E), summary judgment in favor of either party with respect to said turnover request and exemption objection is inappropriate at this time.